**WALKO CORPORATION, Appellant,**

v.

**BURGER CHEF SYSTEMS, INC., an Indiana Corporation, et al.**

No. 75–1135.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 12, 1975.

Decided March 2, 1977.

Elbert R. Shore, Jr., Rockville, Md., with whom John T. Bell, Rockville, Md., was on the brief, for appellant.

Peter D. Bewley, Washington, D. C., with whom Max O. Truitt, Jr., and Robert Morris, Washington, D. C., were on the brief, for Burger Chef Systems, Inc.

Harry W. Goldberg, was on the brief for Holtzman and Platt.

Before Mr. Justice TOM CLARK,* Retired Associate Justice of the Supreme Court of the United States, and ROBINSON and MacKINNON, Circuit Judges.

Opinion for the Court filed by SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

In June, 1968, appellees Burger Chef Systems, Inc., Robert Holtzman and William Platt entered into negotiations with appellant Walko Corporation with a view to leasing a plot on which to build a restaurant. Burger Chef ultimately decided against the venture and communicated its decision to Walko on January 26, 1971.[1] Walko protested, but sought no legal recourse until November, 1973, when it moved to intervene in a suit[2] then pending in the District Court for the District of Columbia between Burger Chef and the individual appellees.[3] That court found Walko's allegations of breach of contract and misrepresentation to be "entirely unrelated" either in law or fact to the litigation before it, and denied Walko's motion on January 15, 1974.[4]

Six weeks later, on February 28, 1974, Walko instituted the present diversity[5] suit in the District Court for the District of Maryland by filing a complaint virtually identical to that proffered in its prior attempt at intervention.[6] The Maryland action was transferred to the District Court here,[7] where summary judgment was granted to appellees on grounds that Walko's claims were barred by a Maryland statute of limitations.[8]

The District Court properly found that Walko's action is governed by the three-year period established by the Maryland statute.[9] The court apparently also

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. These facts, so far as we have stated them, are not in dispute. *Cf.* note 10 *infra.*

2. *Holtzman v. Burger Chef Syss., Inc.,* Civ.No. 1371–72 (D.D.C.).

3. Appendix to Brief for Appellant (App.) 1.

4. *Holtzman v. Burger Chef Syss., Inc., supra* note 2 (memorandum and order January 15, 1974), App. 8–9.

5. See 28 U.S.C. § 1332(a) (1970). Walko is a Delaware corporation. Holtzman and Platt are residents of Maryland. Burger Chef is an Indiana corporation with its principal place of business outside Delaware.

6. Compare App. 3–7 *with* App. 10–14.

7. Pursuant to 28 U.S.C. § 1404(a)(1970) on the joint motion of all parties. Brief for Appellant at 2.

8. *Walko Corp. v. Burger Chef Syss., Inc.,* Civ.No. 74–674 (D.D.C.) (orders of Dec. 13, 1974), App. 36–37.

9. As we later recite, text *infra* at notes 14–15, *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), requires that limitation periods on state-created causes of action be determined by reference to state law. In diversity actions transferred for the convenience of the parties, the applicable choice-of-law rules are those of Maryland, since it is the

found that Walko's cause of action accrued on or about January 26, 1971,[10] three years and one month before the filing of its complaint. Unless Walko's motion to intervene arrested the running of the limitation period for the seventy days it lay before the District Court, the present action indeed is time-barred. We hold that this is a question of Maryland law, and certify that question to the Maryland Court of Appeals for determination.[11]

## I

Shortly after *Erie Railroad Company v. Tompkins*[12] reinterpreted the Rules of Decision Act[13] to hold that state substantive law is to govern diversity actions in the federal courts, the Supreme Court held in *Guaranty Trust Company v. York*[14] that limitation periods for such actions—whether nominally "substantive" or "procedural" —are to be determined by reference to state law. Central to this holding was the concept that "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court."[15]

The *York* "outcome" test was later found in *Ragan v. Merchants Transfer & Warehouse Company*[16] also to require federal courts to look to state law to ascertain when the applicable statute of limitations is tolled. Kansas by statute had defined the "commencement" of an action once for general purposes and a second time with specific reference to its statutes of limitations.[17] The latter definition provided that only service of process tolled the statute,[18] not, as Rule 3 of the Federal Rules of Civil Procedure implies,[19] the mere filing of a complaint. This tolling provision was held controlling in the diversity action before the Court, notwithstanding Rule 3.[20] The reason was simple:

> Since [the] cause of action is created by local law, the measure of it is to be found only in local law. . . . It accrues and comes to an end when local law so declares. . . . Where local law qualifies or abridges it, the federal court must follow suit. Otherwise there is a

---

transferor forum. *Van Dusen v. Barrack*, 376 U.S. 612, 636, 84 S.Ct. 805, 819, 11 L.Ed.2d 945, 961 (1964). Maryland's rules direct us to the Maryland limitation period, *Doughty v. Prettyman*, 219 Md. 83, 148 A.2d 438, 440 (1959), which is three years. Md.Cts. & Jud.Proc.Code Ann. § 5–101 (1976 Supp.).

10. *Walko v. Burger Chef Syss., Inc., supra* note 8, (orders of Dec. 13, 1974, App. 36–37). On this accrual date all agree. *Compare* Brief for Appellant at 3 *with* Brief for Appellee Burger Chef at 4.

11. See Part III *infra*.

12. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

13. "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652 (1970).

14. *Supra* note 9.

15. *Id.* 326 U.S. at 109, 65 S.Ct. at 1470, 89 L.Ed. at 2086.

16. 337 U.S. 530, 534, 69 S.Ct. 1233, 1234–1235, 93 L.Ed. 1520, 1523 (1949).

17. Compare *id.* at 531 n. 4, 69 S.Ct. at 1234 n. 4, 93 L.Ed. at 1522 n. 4, *with* Ely, *The Irrepressible Myth of Erie*, 87 Harv.L.Rev. 693, 731–732 (1974), and Comment, *Federal Rule 3 and the Tolling of State Statutes of Limitations in Diversity Cases*, 20 Stan.L.Rev. 1281, 1282 (1968).

18. *Ragan v. Merchants Transfer & Warehouse Co., supra* note 16, 337 U.S. at 532, 69 S.Ct. at 1234, 93 L.Ed. at 1522–1523.

19. "A civil action is commenced by filing a complaint with the court." Fed.R.Civ.P. 3. As this provision is generally construed, filing tolls the statute of limitations on federal causes of action, see 4 C. Wright & A. Miller, Federal Practice & Procedure § 1056 at 177–178 (1969), although the Advisory Committee's notes recognized that such a construction was contingent upon "whether it is competent for the Supreme Court, exercising the power to make rules of procedure without affecting substantive rights, to vary the operation of the statute of limitations." *Id.* § 1051 at 167 n. 21.

20. *Ragan v. Merchants Transfer & Warehouse Co., supra* note 16, 337 U.S. at 533–534, 69 S.Ct. at 1234–1235, 93 L.Ed. at 1523.

different measure of the cause of action in one court than in the other, and the principle of *Erie* . . . is transgressed.[21]

In the case at bar, however, all parties argue from Rule 3—which *Ragan* held inapplicable to measure state-created causes of action—on the premise that *Ragan* has been overruled *sub silentio* by *Hanna v. Plumer*.[22] At issue in *Hanna* was whether in a diversity case service of process must be made in the manner prescribed by state law or that of the Federal Rules.[23] *Hanna's*

holding for application of the Federal Rule[24] is perceived by many[25] to at least question *Ragan's* choice of state tolling rules over those implicit in Rule 3.

■■■ *Hanna* does render the "brooding omnipresence"[26] of *Erie* less ubiquitous, but it does not banish altogether the "outcome" test enunciated in *York,* as *Hanna* itself indicates.[27] Rather, it holds that the applicability to diversity litigation of an otherwise controlling[28] Federal Rule is conditioned on its compliance[29] with the

**21.** *Id.* at 533, 69 S.Ct. at 1235, 93 L.Ed. at 1523. See also *Woods v. Interstate Realty Co.,* 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) (state law restricting access to state courts to be applied to diversity action in federal court); *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (state rule requiring bond in stockholders' suits applicable in diversity action), both decided on the same day as *Ragan.*

**22.** 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). See Supplemental Memorandum (Supp.Memo.) of Appellees Holtzman and Platt at 2–3; Supp.Memo. Appellee Burger Chef at 3; *cf.* Supp. Memo of Appellant at 1. These memoranda were called for by the Court, *sua sponte,* to treat the choice-of-law question we address here.

**23.** State law required that executors be served in hand, whereas service was effected consonantly with Fed.R.Civ.P. 4(d)(1), permitting service by delivery "at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." *Hanna v. Plumer, supra* note 22, 380 U.S. at 461–462, 85 S.Ct. at 1138–1139, 14 L.Ed.2d at 11.

**24.** *Id.* at 463–464, 85 S.Ct. at 1139–1140, 14 L.Ed.2d at 12.

**25.** See *id.* at 476–477, 85 S.Ct. at 1146–1147, 14 L.Ed.2d at 20 (Harlan, J., concurring). *Cf., e. g., Sylvestri v. Warner & Swasey Co.,* 398 F.2d 598, 604–605 (2d Cir. 1968) concluding that *Hanna* undermined *Ragan); Smith v. Peters,* 482 F.2d 799, 802 (6th Cir. 1973) (same); 2 J. Moore, Federal Practice ¶ 3.07[4] (1975. Supp.) (same). See also *Groninger v. Davison,* 364 F.2d 638, 642 (8th Cir. 1966) (casting doubt on *Ragan* but refusing to depart from it); *Sylvester v. Messler,* 246 F.Supp. 1 (E.D.Mich.1964), *aff'd,* 351 F.2d 472 (6th Cir.), *cert. denied,* 382 U.S. 1011, 86 S.Ct. 619, 15 L.Ed.2d 526 (1965) (same). But see *Witherow v. Firestone Tire & Rubber Co.,* 530 F.2d 160, 164 (3rd Cir. 1976) (approving and following *Ragan); Anderson v.*

*Papillion,* 445 F.2d 841 (5th Cir. 1971) (same); *Ely, supra* note 17, at 730–732 (approving *Ragan).* But *cf.* C. Wright, Federal Courts 246 (2d Ed. 1970) *(Ragan* still probably good law). But see also *Marshall v. Mulrenin,* 508 F.2d 39, 44 (1st Cir. 1974) (casting doubt on and limiting *Hanna). Ragan's* questionable validity has also prompted some courts to make nice distinctions limiting its effect. See, *e. g. Prashar v. Volkswagen of America, Inc.,* 480 F.2d 947, 951 (8th Cir. 1973); *Chappell v. Rouch,* 448 F.2d 446, 450 (10th Cir. 1971).

**26.** *Compare* Clark, *State Law in the Federal Courts: The Brooding Omnipresence of Erie v. Tompkins,* 55 Yale L.J. 267 (1946), *with Ely, supra* note 17, at 698, and McCoid, *Hanna v. Plumer: The Erie Doctrine Changes Shape,* 51 Va.L.Rev. 884, 887 (1965).

**27.** 380 U.S. at 467–470, 85 S.Ct. at 1141–1143, 14 L.Ed.2d at 14–16, and especially *id.* at 471, 85 S.Ct. at 1144, 14 L.Ed.2d at 16–17: "It is true that both the Enabling Act and the *Erie* rule say, roughly, that federal courts are to apply state 'substantive' law and federal 'procedural' law, but from that it need not follow that the tests are identical. For they were designed to control very different sorts of decisions." *Cf. Ely, supra* note 17, at 722–723.

**28.** *Hanna v. Plumer, supra* note 22, 380 U.S. at 464–465, 470, 85 S.Ct. at 1140–1141, 1143, 14 L.Ed.2d at 12–13, 16. See *National Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 316, 84 S.Ct. 411, 414–415, 11 L.Ed.2d 354, 358 (1964); *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 445–446, 66 S.Ct. 242, 246, 90 L.Ed. 185, 191–192 (1946); *Sibbach v. Wilson & Co.,* 312 U.S. 1, 11–14, 61 S.Ct. 422, 425–427, 85 L.Ed. 479, 483–485 (1941).

**29.** The Rules Enabling Act, set out at note 31 *infra,* specifies a period of ninety days during which proposed rules must lie before Congress. If Congress disapproves, it may—and has, see Act of Mar. 30, 1973, Pub.L. No. 93–12, 87 Stat. 9—pass legislation suspending the operation of

dictates [30] of the Rules Enabling Act [31] that gave it birth. When no Federal Rule is implicated, however, and the question is whether state law or judge-made federal law is controlling in an action founded on diversity jurisdiction, reference is properly made not to the Rules Enabling Act, but to the Rules of Decision Act.[32] It is the latter statute, and only that statute, to which *Erie* and *York* pertain.[33] And *Hanna* was careful to note that whenever the Court had found a Federal Rule inapposite because its "scope . . . was not as broad as the losing party urged," it had chosen the applicable law by virtue of the *Erie-York* test.[34]

Were it contended, then, that this litigation "commenced" on some other day than

the rules. It has been argued, see Degnan, *The Law of Federal Evidence Reform,* 76 Harv.L. Rev. 275, 288–289 (1962), that the layover provision in the Rules Enabling Act, sustained in *Sibbach v. Wilson & Co., supra* note 28, 312 U.S. at 15–16, 61 S.Ct. at 427, 85 L.Ed. at 485–486, implicitly allows Congress to adopt as law rules that *do* modify substantive rights, though *pro tanto* outside the original scope of the Act. Our construction is different. Congress' failure to suspend a proposed rule gives it the force not of a legislative enactment, but of a regulation pursuant to the Act. If the rule is subsequently found to be *ultra vires* the Act of which it is a creature, it is void. Otherwise Congress might by such a layover provision circumvent the veto power of the President, a course of dubious constitutional validity. Compare *Buckley v. Valeo,* 424 U.S. 1, 284–285, 96 S.Ct. 612, 757, 46 L.Ed.2d 659, 839 (1976) (White, J., concurring in part and dissenting in part) with *Clark v. Valeo,* No. 76–1825 (D.C.Cir. *en banc* Jan. 21, 1977), at 15–27 (MacKinnon, J., dissenting).

**30.** *Hanna v. Plumer, supra* note 22, 380 U.S. at 464–465, 470, 85 S.Ct. at 1140–1141, 1143, 14 L.Ed.2d at 12–13, 16. See *National Equip. Rental, Ltd. v. Szukhent, supra* note 28, 375 U.S. at 316, 84 S.Ct. at 414–415, 11 L.Ed.2d at 358; *Mississippi Publishing Corp. v. Murphree, supra* note 28, 326 U.S. at 445–446, 66 S.Ct. at 246, 90 L.Ed.2d at 191–192; *Sibbach v. Wilson & Co., supra* note 28, 312 U.S. at 11–14, 61 S.Ct. at 425–427, 85 L.Ed. at 483–485. In such a case the rule must relate to the practice and procedure of the federal courts. *Hanna v. Plumer, supra* note 22, 380 U.S. at 464, 85 S.Ct. at 1140, 14 L.Ed.2d at 12–13; *Sibbach v. Wilson & Co., supra* note 28, 312 U.S. at 14, 61 S.Ct. at 426–427, 85 L.Ed. at 485. Its very existence, however, is strong evidence of such a relation. *Hanna v. Plumer, supra* note 22, 380 U.S. at 471, 85 S.Ct. at 1144, 14 L.Ed.2d at 16–17. In addition, the rule may not "abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2072 (1970), set out in relevant part in note 30 *infra; Sibbach v. Wilson & Co., supra* note 28, 312 U.S. at 10, 61 S.Ct. at 424–425, 85 L.Ed. at 483. See *Ely, supra* note 17, at 719–738; Comment, 50 N.Y.U.L.Rev. 952, 957 (1975). Cf. *Marshall v. Mulrenin, supra* note 25, 508 F.2d at 44 (*Hanna* "merely means that a [federal] rule is not to be applied to the extent, if any, that it would defeat rights arising from state

substantive law as distinguished from state procedure"). See also *Hanna v. Plumer, supra* note 22, 380 U.S. at 471, 85 S.Ct. at 1144, 14 L.Ed.2d at 16–17. This is true whether or not the substantive change in question might constitutionally have been effected by Congress, for the Enabling Act, note 31 *infra,* clearly does not represent a delegation of the entire congressional power "to make rules governing the practice and pleading" in federal courts, which "includes a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either. *Cf. McCulloch v. Maryland,* [17 U.S.] 4 Wheat. 316, 421, 4 L.Ed. 579 [(1817)]." *Hanna v. Plumer, supra* note 22, 380 U.S. at 472, 85 S.Ct. at 1144, 14 L.Ed.2d at 17. See *Ely, supra* note 17, at 718.

**31.** The Rules Enabling Act, 28 U.S.C. § 2072 (1970), provides in pertinent part:

The Supreme Court shall have the power to prescribe, by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts of the United States in civil actions.

Such rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury as at common law and as declared by the Seventh Amendment to the Constitution.

Such rules shall not take effect until they have been reported to Congress by the Chief Justice at or after the beginning of a regular session thereof but not later than the first day of May, and until the expiration of ninety days after they have been thus reported.

**32.** See note 13 *supra.*

**33.** *Guaranty Trust Co. v. York, supra* note 9, 326 U.S. at 101–103, 65 S.Ct. at 1465–1467, 89 L.Ed. at 2081–2083; *Erie R. R. Co. v. Tompkins, supra* note 12, 304 U.S. at 71, 58 S.Ct. at 818–819, 82 L.Ed. at 1190.

**34.** *Hanna v. Plumer, supra* note 22, 380 U.S. at 470, 85 S.Ct. at 1143, 14 L.Ed.2d at 16, citing, *inter alia, Ragan v. Merchants Transfer & Warehouse Co., supra* note 16; *Cohen v. Beneficial Indus. Loan Corp., supra* note 21; *Palmer v. Hoffman,* 318 U.S. 109, 117, 63 S.Ct. 477, 482, 87 L.Ed. 645, 651 (1943).

February 28, 1974—the date Walko's complaint was filed [35]—a reevaluation of *Ragan's* impact might be in order.[36] That is not our case, however. We are asked instead whether, for purposes of the Maryland statute of limitations, the clock stopped on Walko's right to sue for so long as its petition to intervene was pending. Thus phrased, the tolling problem is analogous to that presented when, between the time a cause of action accrues and litigation commences, the plaintiff is temporarily disabled from suit,[37] or the defendant has for a period absented himself from the jurisdiction,[38] or supervening circumstances have prevented suit,[39] or there has been some inducement not to sue.[40] Like those matters, the one before us is not governed by Rule 3, whatever it has to say about tolling in other respects.[41]

█ Resultantly, we face a "relatively unguided *Erie* choice"[42] under the Rules of Decision Act.[43] This choice we conceive to hinge on the degree to which state policies, other than those primarily directed to administration of the state judicial system,[44] would be impeded by displacement of the state rule by federal common law.[45] We must be guided also by reference to the twin aims of *Erie*: the desire to forestall forum-shopping[46] and the conviction "that

**35.** See text at note 5 *supra*.

**36.** See generally cases cited *supra* note 25. As we do not have the potential conflict inherent in *Ragan*, we express no view on the likely result of such a reevaluation.

**37.** See, e. g., *Accardi v. United States*, 435 F.2d 1239, 1241 (3rd Cir. 1970); *Roman v. A. H. Robins Co., Inc.*, 518 F.2d 970, 972 (5th Cir. 1975); *White v. Padgett*, 475 F.2d 79, 83 (5th Cir.), *cert. denied*, 414 U.S. 861, 94 S.Ct. 78, 38 L.Ed.2d 112 (1973); *Walker v. Pacific Basin Trading Co.*, 536 F.2d 344 (10th Cir. 1976). See generally *Developments, Statutes of Limitations*, 63 Harv.L.Rev. 1177, 1229–1232 (1950); Note, *Termination of Tolling of Statutes of Limitations by Restoration to Capacity*, 33 S.Cal.L.Rev. 321 (1960); Note, 20 U.Pitt.L.Rev. 879 (1959). See also *Canterbury v. Spence*, 150 U.S.App.D.C. 263, 284, 464 F.2d 772, 793, *cert. denied*, 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972).

**38.** See e. g., *Filson v. Fountain*, 90 U.S.App. D.C. 273, 274, 197 F.2d 383, 384 (1952); *Dedmon v. Falls Prods., Inc.*, 299 F.2d 173, 176 (5th Cir. 1962); *Roberts v. Berry*, 541 F.2d 607, 610 (6th Cir. 1976); *Chamberlain v. Lowe*, 252 F.2d 563, 565 (6th Cir. 1958); *Schoenfeld v. Neher*, 428 F.2d 152, 155 (10th Cir. 1970). See generally *Developments, supra* note 37, at 1224–1228; Note, 12 Vand.L.Rev. 295 (1958).

**39.** See, e. g., *Braun v. Sauerwein*, 77 U.S. (10 Wall.) 218, 222–224, 19 L.Ed. 895, 896–897 (1870). *Cf.* Note, *Does War Toll the Statute of Limitations?*, 57 Colum.L.Rev. 1140 (1957). See generally *Developments, supra* note 37, at 1233–1234. See also the cases dealing with the question whether a statute of limitations is suspended by imprisonment, e. g., *Kaiser v. Cahn*, 510 F.2d 282, 285 (2d Cir. 1974); *Harrison v. Wright*, 457 F.2d 793 (6th Cir. 1972); *Bergschneider v. Denver*, 446 F.2d 569, 570 (9th Cir. 1971); the effect of duress, *Davis v. Wil-*

*son*, 349 F.Supp. 905, 906–907 (E.D.Tenn.), *aff'd*, 471 F.2d 653 (6th Cir. 1972); and a change of law bringing a cause of action into being, e. g., *United States v. One 1961 Red Chevrolet Impala Sedan*, 457 F.2d 1353, 1358 (5th Cir. 1972).

**40.** See, e. g., *Gonzalez v. Fireman's Fund Ins. Co.*, 385 F.Supp. 140, 143 (D.P.R.1974). *Cf. Binkley v. Teledyne Mid-America Corp.*, 460 F.2d 276, 277 (8th Cir. 1972). See generally *Developments, supra* note 37, at 1222–1224; Note, 41 Tex.L.Rev. 147 (1962).

**41.** See text and notes *supra* at notes 16–25.

**42.** *Hanna v. Plumer, supra* note 22, 380 U.S. at 471, 85 S.Ct. at 1144, 14 L.Ed.2d at 17.

**43.** See note 13 *supra*.

**44.** See *Hanna v. Plumer, supra* note 22, 380 U.S. at 469, 85 S.Ct. at 1142–1143, 14 L.Ed.2d at 15–16. *Cf. Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 536, 78 S.Ct. 893, 900, 2 L.Ed.2d 953, 962 (1958). See also *Coady v. Aguadilla Terminal, Inc.*, 456 F.2d 677, 678–679 (1st Cir. 1972).

**45.** *Hanna v. Plumer, supra* note 22, 380 U.S. at 468 n. 9, 85 S.Ct. at 1142 n. 9, 14 L.Ed.2d at 15 n. 9; *Byrd v. Blue Ridge Elec. Coop., supra* note 44, 356 U.S. at 536–537, 78 S.Ct. at 900–901, 2 L.Ed.2d at 962; *Cohen v. Beneficial Indus. Loan Corp., supra* note 21, 337 U.S. at 555–556, 69 S.Ct. at 1229–1230, 93 L.Ed. at 1541–1542; *Guaranty Trust Co. v. York, supra* note 9, 326 U.S. at 108–109, 65 S.Ct. at 1469–1470, 89 L.Ed. at 2085–2086.

**46.** *Hanna v. Plumer, supra* note 22, 380 U.S. at 467–468, 85 S.Ct. at 1141–1142, 14 L.Ed.2d at 14–15; *Erie R. R. Co. v. Tompkins, supra* note 12, 304 U.S. at 77, 58 S.Ct. at 822, 82 L.Ed. at 1193–1194.

it would be unfair for the character or result of a litigation materially to differ because the suit had been brought in a federal court." [47]

## II

■ The concerns addressed by state legislators and judges with respect to suspensions of a state statute of limitations are similar to those that preoccupy them in the process of determining when a state-created cause of action accrues, or how long the applicable limitation period ought to be. That these latter questions are to be governed by state law is long since settled.[48] We would be tampering with policy choices best made in intimate relation to those determinations were we to substitute a federal judgment as to whether a particular occurrence should arrest the statute's running. Logically, those choices should be made within parameters established by those charged with formulating other state rules imposing limitations on inauguration of litigation. Not surprisingly, then, federal courts have looked to state law to determine whether a plaintiff's disability [49] or a defendant's absence [50] interrupts the running of a state statute of limitations. While the federal decisions are not unanimous in their selections of the law defining the effect of proceedings previously pending,[51] we find the issue at bar sufficiently similar to disability and absence to command deference to state law there as well.

The rectitude of recourse to state law in this circumstance is underscored by the Supreme Court's adoption for a federal cause of action in *Johnson v. Railway Express Agency* [52] of a state's most nearly applicable limitation period as well as the suspension, tolling and revival provisions with which the state provision was freighted. Relying on the state rule refusing to toll the time limit on civil rights actions for the period during which related proceedings were pending, the Court rested its holding on grounds that

> [i]n virtually all statutes of limitations the chronological *length* of the limitation period is *interrelated* with provisions regarding *tolling*, revival, and questions of

**47.** *Hanna v. Plumer, supra* note 22, 380 U.S. at 467, 85 S.Ct. at 1141, 14 L.Ed.2d at 14; *Erie R. R. Co. v. Tompkins, supra* note 12, 304 U.S at 74–77, 58 S.Ct. at 820–822, 82 L.Ed. at 1192–1194.

**48.** *Guaranty Trust Co. v. York, supra* note 9 (state limitation periods applicable); *Nardone v. Reynolds,* 538 F.2d 1131 (5th Cir. 1976) (state accrual rules applicable); *Roberts v. Berry, supra* note 38, 541 F.2d at 610 (same); *Moran v. H. W. S. Lumber Co., Inc.,* 538 F.2d 238, 243 (9th Cir. 1976) (same). *Cf. Canterbury v. Spence, supra* note 37; *District of Columbia Armory Bd. v. Volkert,* 131 U.S.App. D.C. 74, 402 F.2d 215 (1968). See also *Hayden v. Ford Motor Co.,* 497 F.2d 1292, 1294 (6th Cir. 1974); *Horn v. Burns & Roe,* 536 F.2d 251, 253 n. 4 (8th Cir. 1976).

**49.** *E. g., Roman v. A. H. Robins Co., Inc., supra* note 37, 518 F.2d at 972.

**50.** *E. g., Dedmon v. Falls Prods., Inc., supra* note 38, 299 F.2d at 175–176; *Schoenfeld v. Neher, supra* note 38, 428 F.2d at 155.

**51.** Compare *Eisler v. Stritzler,* 535 F.2d 148, 152 (1st Cir. 1976) (alternative holding: state law applies); *Borel v. Fibreboard Paper Prods. Corp.,* 493 F.2d 1076, 1101 (5th Cir. 1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974) (state law applies); and *Anderson v. Papillion, supra* note 25, 445 F.2d at 842 (same), with *Atkins v. Schmutz Mfg. Co.,* 435 F.2d 527 (4th Cir. *en banc* 1970) (federal law applies). *Cf. Brown v. Lamb,* 134 U.S.App. D.C. 314, 316 n. 4, 414 F.2d 1210, 1212 n. 4 (1969), *cert. denied,* 397 U.S. 907, 90 S.Ct. 904, 25 L.Ed.2d 88 (1970) (apparently using local law). See also *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 569–570 (3rd Cir. 1976); *Wharton v. Jones,* 285 F.Supp. 634 (D.D.C. 1968) (determining tolling effect of prior injury suit on wrongful death chose in action by state law). *Borel, supra,* presents a fact situation which particularly compels recourse to state law to determine whether prior proceedings suspend the statute of limitations. There the question was whether a previously pending state administrative proceeding suspended the statute of limitations on a cause of action related to the subject of the administrative action. The prospect of federal courts determining the suspending effect of state proceedings by a rule different from that used by state courts may be peculiarly violative of state policy, and state law was therefore held to control.

**52.** 421 U.S. 454, 462, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295, 302–303 (1975).

application. In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim.[53]

Interposition of a federal rule in these premises would, moreover, be productive of the very mischief that *Erie* and its progeny are designed to deter. If federal courts hold time-barred cases that state courts would have entertained, nonresident defendants could gain advantage by removal [54] not only over their diverse adversaries [55] but also over resident or non-diverse defendants [56] and all those whose stake was less than the jurisdictional amount prerequisite to removal.[57] If, conversely, federal courts hear diversity cases not timely by the lights of state tribunals, plaintiffs with large claims against diverse parties may escape the consequences of state law, thus faring better than those to whom the federal courts are closed. The very disparity between plaintiff and plaintiff, defendant and defendant, wrought by accidents of residence and the amount colorably in controversy, would encourage forum-shopping. And that disparity would be attributable solely to a federal court's policy disagreement with the custodians of state law over the consideration to be given to a plaintiff's good-faith attempt to press a state-created right *vis-a-vis* a potential defendant's interests in early notice and eventual repose of litigable disputes. The Rules of Decision Act [58] gives federal courts no license to shape the policy for diversity litigation, and we refuse in this case to fashion such a license for ourselves.

Lastly, we note that suspension of a state statute of limitations on a nonfederal claim by reason of the pendency of other proceedings has only the remotest effect on federal judicial administration. Federal judges need shoulder no new burdens,[59] nor will the normal fact-finding processes of the federal courts be constrained in any way.[60] Adherence to state law in this regard will affect the efficiency of the federal system only insofar as it dictates that a case not time-barred under state rules be heard in a federal court.

## III

We are persuaded that the vitality of Walko's claim is to be determined by state law. The question then arising is whether, under the applicable Maryland statute of limitations, the pendency of Walko's unsuccessful motion to intervene in the Burger Chef litigation prolonged the lifespan of the claim. We find Maryland law unclear on that score. Fortunately, however, Maryland has enacted the Uniform

53. *Id.* at 463–464, 95 S.Ct. at 1722, 44 L.Ed.2d at 303 (emphasis added). Accord, *Chambers v. Omaha Pub. School Dist.* 536 F.2d 222, 230–231 (8th Cir. 1976). See *Kaiser v. Cahn, supra* note 39 (state suspension rule applied in federal civil rights action); *White v. Padgett, supra* note 37 (same); *Harrison v. Wright, supra* note 39 (same); *Accardi v. United States, supra* note 37 (same); *Bergschneider v. Denver, supra* note 39 (same).

54. Pursuant to 28 U.S.C. § 1441(b) (1970), all state court defendants whose cases might have been brought originally in a federal court may remove them to an appropriate federal court, except those who are residents of the forum state. *Patch v. Wabash R. R. Co.,* 207 U.S. 277, 28 S.Ct. 80, 52 L.Ed. 204 (1907).

55. Whose claims would not have been barred in the state court.

56. See note 54 *supra.*

57. See 28 U.S.C. § 1332(b) (1970) (federal courts have no jurisdiction to hear diversity cases in which the amount in controversy is less than $10,000).

58. 28 U.S.C. § 1652, set out in *supra* note 13.

59. See *Hanna v. Plumer, supra* note 22, 380 U.S. at 463 n. 1, 469, 85 S.Ct. 1139 n. 1, 1142–1143, 14 L.Ed.2d 12 n. 1, 15–16. *Cf. Ragan v. Merchants Transfer & Warehouse Co., supra* note 16, where, arguably at least, greater diligence might be required of a federal process server in diversity cases than nondiversity cases. But *cf.* 4 C. Wright & A. Miller, Federal Practice, *supra* note 19, § 1056 at 178–181.

60. *Cf. Byrd v. Blue Ridge Elec. Coop., supra* note 44, 356 U.S. at 537–538, 78 S.Ct. at 900–901, 2 L.Ed.2d at 962–963.

Certification of Questions of Law Act,[61] and by utilizing it we may avoid the hazards inherent in any attempt to forecast how the Maryland courts might rule by the simple expedient of affording the Maryland Court of Appeals an opportunity to address the question.[62] Preferring that course, we certify to that court the following question and respectfully request its opinion thereon:

Was the statute of limitations prescribed by *Md. Courts and Judicial Proceedings Code Ann.* § 5–101 (1974) suspended during the pendency of appellant's motion to intervene in Civil Action No. 1317–72 in the United States District Court for the District of Columbia among the corporate and individual appellees herein?

*Order accordingly.*

---

**61.** Md. Cts. & Jud.Proc.Code Ann. § 12–601 (1976):

The Court of Appeals may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court . . . when requested by the certifying court if there is involved in any proceeding before the certifying court a question of law of this state which may be determinative of the cause than pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the Court of Appeals of this state.

**62.** We are mindful that "[n]eedless [federal] decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law," *UMW v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218, 228 (1966), as well as of the Supreme Court's recent suggestion in *Lehman Bros. v. Schein*, 416 U.S. 386, 390–392, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215, 219–221 (1974) that though resort to certification is not mandatory it is "particularly appropriate" where the issue is novel and the federal court is dealing with other than the *lex fori*.