Margo BOUCHET, Appellant,

v.

The NATIONAL URBAN LEAGUE, INC., et al.

Margo BOUCHET, Appellant,

v.

The NATIONAL URBAN LEAGUE, INC., et al.

Nos. 82–1130, 82–1250.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 8, 1982.

Decided March 23, 1984.

Thomas G. Corcoran, Jr., Washington, D.C., for appellant.

Alphonso A. Christian, II, Washington, D.C., with whom Vincent H. Cohen, Washington, D.C., was on the brief, for appellees.

Before BORK and SCALIA, Circuit Judges, and BAZELON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

Appellant Margo Bouchet appeals from two orders of the District Court. The first order (appealed from in No. 82–1250) entered judgment in favor of appellees, the National Urban League and its employee, Napoleon Johnson, following a bench trial on appellant's initial complaint, containing a Title VII claim of sex discrimination. The second order (appealed from in No. 82–1130) granted summary judgment dismissing her second complaint, containing claims for defamation and "sexual extortion" under District of Columbia law. Because all the claims arise from the same set of circumstances, and were indeed originally joined in a single complaint, we have consolidated these actions on appeal. They present the issues, among others, whether jurisdiction over pendent state claims requiring a jury trial, which jurisdiction may have required common factual issues in the equitable Title VII claim to be governed by the jury determination, was properly declined; whether the District of Columbia's one-year or three-year statute of limitations applied to the state claims; whether that statute is tolled by the pendency of a suit that is subsequently dismissed without prejudice; and whether the evidence in the Title VII suit adequately supported the District Court's judgment. Preliminary to all these, and perhaps most difficult of all, it

presents the issue—recurrently wasteful of the efforts of the judges of this court and of the District Court—of what was the basis for an unexplained order of the trial judge.

I

The National Urban League, Inc., is a non-profit civil rights and social service organization many of whose projects are funded by the United States government. On November 23, 1977 Napoleon Johnson, Director of the League's Economic Development Department with an office in New York City, hired appellant Margo Bouchet, an attorney, as an employee of the League. Johnson was appellant's first contact with the League, having met her at a social function in Los Angeles in March 1977, and he remained appellant's immediate supervisor throughout her period of employment.

Bouchet was hired to administer the National Youth Participation Observer Committee ("NYPOC") project that was being financed by the Department of Labor. According to the findings of the District Court, it became painfully obvious within a matter of months that she was not qualified to handle her responsibilities. Officials of the Department of Labor became extremely dissatisfied with her performance, notified Johnson twice by letter of that dissatisfaction, and finally demanded, as a condition of continued funding of the NYPOC project that appellant improve her performance or be replaced. Although attempts were made by the League to assist her, the situation did not improve and appellant's employment was terminated on May 22, 1978.

Appellant saw things differently. According to her version of the facts, it was not her incompetence, but rather Johnson's sexual interest in her, combined with her steadfast refusal to favor his advances, that was responsible for the problems she encountered with her co-workers and Department of Labor officials, and for the

eventual loss of her job. She alleged that Johnson conspired with Labor officials to make things difficult for her with the NYPOC project and then promised to resolve her difficulties if she would accede to his sexual advances. Early in 1978, appellant began to complain about Johnson's behavior. She first complained to the Deputy Director of the League in Washington, D.C., and then filed a written Equal Employment Opportunity Commission complaint on April 11, 1978. On November 13, 1978, after exhausting her administrative remedies, appellant filed her initial complaint in District Court against the League and Johnson.[1] The history of the litigation that followed is complex.

Paragraph 1 of appellant's complaint stated that "[t]his action is brought pursuant to Title VII of the Civil Rights Act of 1964 ... for unlawful discrimination in employment on the basis of sex.... Equitable and other relief are sought under 42 U.S.C. § 2000e–5(g)." Civil No. 78–2138, Complaint at 1 (filed Nov. 13, 1978). The complaint subsequently explained that "[j]urisdiction *as to certain other claims* is predicated on the doctrine of pendent jurisdiction." *Id.* (emphasis added). Various paragraphs of the complaint expressly alleged defamation, sexual harassment, assault, and malicious interference with contractual relationship. The relief sought included compensatory and punitive damages, an order directing the League to expunge all material relating to the matters complained of from appellant's personnel file, and other unspecified "appropriate" relief. Appellant also demanded a jury trial.

Appellees moved to strike the claim for legal damages and the demand for a jury trial, arguing that appellant had based her complaint solely on Title VII, under which only equitable relief and never a jury trial is available. Appellant opposed their motion, explaining that her complaint included additional causes of action which

---

1. Other employees were initially joined in the complaint as defendants but later dismissed because they had not been served or named in the complaint submitted to the Equal Employment Opportunity Commission.

"involve[ ] rights and remedies of the sort typically enforced in an action at law ... [and] require a jury trial on demand." Plaintiff's Response to Defendant's Motion to Strike at 1 (filed Jan. 22, 1979). Judge Hart granted appellee's motion on March 7, 1979, stating no basis for his order.

Shortly after that order was issued, appellant filed a motion to certify the case for interlocutory appeal. That motion was denied by Judge Hart on March 30, 1979. Appellant then filed a petition with this court on April 12, 1979, seeking permission to appeal Judge Hart's first order. She abandoned that course of action because the pleading was not authorized by the applicable rules of appellate procedure. On April 23, 1979, appellant properly filed a Petition for a Writ of Mandamus with this Court seeking to review Judge Hart's order. After changing counsel, however, she voluntarily withdrew that petition on the ground that she intended to file an amended complaint that "might well moot the issues presented by the petition." Appellant's Brief (No. 82–1130) at 2.

On July 20, 1979, appellant moved to file an amended complaint which clarified her claims by reorganizing them in separate counts and requesting specific relief for each. The proposed amended complaint opened with the explanation that "[t]his action is brought pursuant to Title VII of the Civil Rights Act of 1964 ... *and the common law*," Civil No. 78–2138, First Amended Complaint at 1 (filed Feb. 29, 1980) (emphasis added). Judge Penn, to whom the case was reassigned, initially granted the amendment, but later denied it, having concluded, upon appellees' request for reconsideration, that the amended complaint presented issues which were identical to those before Judge Hart when he had granted the Motion to Strike, and that it was therefore barred by the doctrine of law of the case. The order also relied upon the alternative ground of the statute of limitations, reasoning that since all the claims had arisen on or before May 31, 1978, and appellant had filed the Motion to Amend on July 20, 1979, the District of Columbia's one-year statute of limitations

for defamation and sexual extortion, D.C. Code § 12–301(4) (1981), barred her allegedly "new" claims.

Following the denial of her motion to amend, appellant filed a second complaint, which in two separate counts requested relief for alleged defamation and sexual extortion. Appellees immediately moved to dismiss this complaint, arguing that the previous orders barred these claims under the doctrine of law of the case and the statute of limitations. On January 29, 1982, Judge Penn granted appellees' Motion for Summary Judgment with regard to this second complaint.

Trial went ahead on appellant's original complaint without a jury. After nine days of testimony, Judge Penn entered judgment for defendants. *Bouchet v. National Urban League*, Civil No. 78–2138 (D.D.C. Mar. 3, 1982).

## II

■ We must first consider appellant's argument that the District Court erred in striking her jury-trial demand and denying her motion to file an amended complaint. This action had potential significance beyond its effect of ultimately terminating her state-law claims. As a general rule, when a case contains claims triable to a jury and claims triable to the court that involve common issues of fact, the jury's resolution of those issues governs the entire case. *See Dairy Queen v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). If, as appellant asserts, this rule is applicable with respect to Title VII (non-jury) claims, then the alleged erroneous disregard of her state-law claims and the consequent denial of her demand for jury trial would infect the disposition of her Title VII claim as well, since most if not all of its elements would have been presented to the wrong trier of fact. Not only would a jury trial on her tort claims be required, but the Title VII judgment—even if otherwise valid—would have to be vacated, and the

whole case retried, giving preclusive effect to all findings of fact by the jury. *See Calnetics Corp. v. Volkswagen of America, Inc.*, 532 F.2d 674, 690 (9th Cir.), *cert. denied*, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976).

The validity of appellant's jury-trial argument hinges on whether she was entitled to try her legal and equitable claims joined in one federal action. Certainly she attempted to do just that. Judge Hart offered no explanation of his order striking the demand for jury trial and the request for compensatory and punitive damages, so we are left entirely to speculate as to what he had in mind. Since his reason was presumably the correct one, it would have facilitated our task—as, we shall shortly see, it would have facilitated the task of his colleague Judge Penn—if he had set forth even briefly the basis of his analysis. Even if his reason had been the wrong one, however, we would affirm his action if it had a proper basis in the record. *Langnes v. Green*, 282 U.S. 531, 538–39, 51 S.Ct. 243, 246, 75 L.Ed. 520 (1931). We proceed, then, to consider what that basis might be. Four possibilities exist.

■ First, and perhaps most plausibly, the decision may have been based on the opening language of the Complaint: "This action is brought pursuant to Title VII...." That prologue cannot reasonably be interpreted, however, as an expression of the exclusive claim for relief, since the Complaint states later in the same paragraph that "[j]urisdiction as to certain other claims is predicated on the doctrine of pendent jurisdiction." Paragraphs 30–37 of the Complaint clearly set forth claims under District of Columbia law for defamation, tortious interference with contractual relations, and what appellant later referred to as "sexual extortion." Appellant claimed violations of other federal statutes as well—42 U.S.C. § 1985 (Supp. V 1981) (conspiracy to interfere with civil rights) and § 1986 (1976) ("action for neglect to prevent" a violation of § 1985). These latter claims have not been pursued on appeal, but their presence in the Complaint

further demonstrates that the prologue could not reasonably be interpreted as an expression of the exclusive basis for relief. Even without reference to the doctrine that pleadings are to be liberally construed, *see Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969); Fed.R.Civ.P. 8(f), the Complaint could not properly be regarded as setting forth only a Title VII equitable claim.

■ Second, as vigorously argued by appellees, Judge Hart may have concluded that appellant's tort allegations were "identical to, indistinguishable from, and wholly subsumed within [her] Title VII cause of action." Appellees' Brief (No. 82–1250) at 33–34. It is clear, however, that the "incidental" nature of legal claims does not deprive them of their entitlement to separate relief and jury consideration, *see Ross v. Bernhard*, 396 U.S. 531, 537–38, 90 S.Ct. 733, 737–38, 24 L.Ed.2d 729 (1970), and that Title VII does not "subsume" other claims based on the same set of facts, 42 U.S.C. § 2000e–7; *see Johnson v. Railway Express Agency*, 421 U.S. 454, 461, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975).

■ Third, Judge Hart may have stricken the jury trial demand because he concluded that the tort allegations, though intended to be separate claims, were insufficient to state causes of action. Of course state-law causes of action pleaded in a Title VII case should be dismissed if frivolous; and a plaintiff should not be permitted to "pyramid her possible recovery" by "casting and recasting the same basic facts in a number of different ways to sustain allegedly different claims...." *Clark v. World Airways*, 24 Fair Empl.Prac.Cas. (BNA) 305, 307 n. 6 (D.D.C.1980). Thus, Judge Hart may have treated appellee's motion to strike under Fed.R.Civ.P. 12(f) as a motion to dismiss for failure to state a claim, Fed.R.Civ.P. 12(b)(6). However, although dismissal under Rule 12(b)(6) might have been proper with regard to some of plaintiff's state-law claims, including the claims of "sexual extortion" and tortious interference with contract, *see Clark v. World Airways, supra*, 24 Fair Empl.Prac.

Cas. at 306, it was unquestionably not proper with regard to at least one—the claim of defamation. Judge Penn, in his order of February 18, 1981, found that plaintiff had set out an allegation of defamation. Appellees' assertion that publication was not alleged in the original complaint is not correct. *See* Complaint, para. 35. Nor can we rely on Judge Penn's finding that the alleged defamatory statements were truthful, since his authority to make such a finding, instead of leaving the issue to a jury, is the very point ultimately at issue. Based upon the pleadings, we cannot assure ourselves, as we must when addressing a Rule 12(b)(6) challenge, that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (footnote omitted). Therefore, we hold that plaintiff did set forth a state-law claim for relief and that Judge Hart would have erred had he based his order on a contrary conclusion.

The fourth possible explanation of Judge Hart's order—and one which evidently occurred to appellant, since she later filed an amended complaint setting forth new bases for jurisdiction—is that he dismissed the state-law tort claims for lack of subject-matter jurisdiction. A federal court has the duty to determine whether it has subject-matter jurisdiction. *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908); 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3522 at 48 & n. 12 (cases) (1975). Thus, in ruling on appellees' Motion to Strike Judge Hart was obliged to consider the jurisdictional basis for appellant's state-law tort claims, even though neither party argued the point. No independent basis for federal jurisdiction over the state claims was asserted in the original complaint. Of course a federal court has the power to entertain state claims that are brought jointly with federal claims and derive from "a common nucleus of operative fact," so that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Work-*

*ers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). That power, however, is a discretionary one, and need not be exercised when dismissal of the pendent state claims will better serve the interests of judicial economy, convenience and fairness to the litigants. *Id.* at 726, 86 S.Ct. at 1139.

[10] A number of courts have declined to exercise pendent jurisdiction over related state claims when the only substantial federal claim arose under Title VII. *See, e.g., Lazic v. University of Pennsylvania*, 513 F.Supp. 761, 769–70 (E.D.Pa.1981) (state claim of tortious interference with right to contract); *Jong-Yul Lim v. International Institute of Metropolitan Detroit, Inc.*, 510 F.Supp. 722 (E.D.Mich.1981) (unspecified state claim); *Kiss v. Tamarac Utilities, Inc.*, 463 F.Supp. 951, 954 (S.D.Fla. 1978) (state claims for defamation, interference with employment relationship and assault); *Silverman v. Lehigh University*, 19 Fair Empl.Prac.Cas. (BNA) 983, 990 (E.D. Pa.1976) (state civil-rights act claim); *Brown v. Frito-Lay, Inc.*, 15 Fair Empl. Prac.Cas. (BNA) 1055, 1059 (D.Kan.1976) (state civil-rights act claim); *Van Hoomissen v. Xerox Corp.*, 368 F.Supp. 829 (N.D. Cal.1973) (state claim for intentional infliction of emotional distress). A similar disposition was appropriate in the circumstances of this case. There is a great discrepancy between the relatively limited equitable relief available under Title VII (reinstatement and back pay) and the much broader relief sought under this appellant's state causes of action (full compensatory and punitive damages), so that the pendent claims might well become the predominant element of the lawsuit. *See Kiss v. Tamarac Utilities, Inc., supra*, 463 F.Supp. at 954; *Van Hoomissen v. Xerox Corp., supra*, 368 F.Supp. at 840; *see also United Mine Workers v. Gibbs, supra*, 383 U.S. at 726–27, 86 S.Ct. at 1139 ("if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed"). They would be pen-

dent to this Title VII litigation much as a dog is pendent to its tail.[2] We conclude that it was proper to decline pendent jurisdiction over the tort claims, and that Judge Hart's order striking the jury-trial demand is sustainable on that ground.

### III

That is not, however, the end of the jury-trial issue. For as we have noted, after several unsuccessful attempts to have Judge Hart's order reversed appellant tried to remedy the defects in her original pleading with an amended complaint. The latter not only carefully set out the torts of "sexual extortion" and defamation as separate counts, but also asserted, for the first time, diversity of citizenship as an independent jurisdictional basis for the state-law tort claims. Judge Penn, to whom the case had been reassigned, ultimately denied the motion to amend, ruling alternatively that Judge Hart's order was law of the case or that the amended complaint was barred by the applicable one-year statute of limitations.

We agree with appellant that the former ground was error. "The doctrine of law of the case comes into play only with respect to issues previously determined." *Quern v. Jordan*, 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148, 59 L.Ed.2d 358 (1979). Questions that merely *could* have been decided do not become law of the case, 18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4478 at 788–89 (1981); only when an issue not expressly addressed must have been decided by "necessary implication"

will the doctrine be applied, *Morrow v. Dillard*, 580 F.2d 1284, 1290 (5th Cir.1978). Judge Hart necessarily decided only that pendent jurisdiction would not lie. He did not face the new issue presented to Judge Penn on appellant's motion for leave to file an amended complaint: whether claims for defamation and "sexual extortion" could properly be joined with a Title VII claim where jurisdiction over the former was asserted under 28 U.S.C. § 1332 (1976).

On the other hand, Judge Penn's alternate ground of the one-year statute of limitations seems to us valid. Appellant admits that she presented her tort causes of action with a "correct jurisdictional basis" for the first time in the amended complaint. Civil No. 81–0584, Transcript of Proceedings at 10 (May 28, 1981). However, she argues (1) that the statute of limitations was tolled by the filing of the original complaint, and (2) that the applicable limitations period was three years rather than one.[3] District of Columbia law, which unquestionably governs these issues, *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), unequivocally provides a one-year period for appellant's defamation claim. D.C.Code § 12–301(4); *see Universal Airline v. Eastern Air Lines*, 188 F.2d 993, 996 (1951). We reject as frivolous appellant's argument that "the period is equitably tolled by Johnson's continuing iteration of the defamatory material [as a witness at the Title VII trial]." Appellant's Brief (No. 82–1130) at 13–14. An absolute privilege attaches to statements made during the course of a judicial proceeding. *See*

2. In light of these factors, we do not rely upon, and do not consider the validity of, the ground relied upon by some courts, that joinder of a state tort claim is incompatible with a congressional intent to exclude jury trial in Title VII cases. *See Jong-Yul Lim v. International Institute of Metropolitan Detroit, Inc., supra,* 510 F.Supp. at 725; *Kiss v. Tamarac Utilities, Inc., supra,* 463 F.Supp. at 954; *see* Catania, *State Employment Discrimination Remedies and Pendent Jurisdiction Under Title VII: Access to Federal Courts,* 32 AM.U.L.REV. 777, 807 (1983).

3. Neither by moving for reconsideration of Judge Penn's statute of limitations holding on

the amended complaint, nor in connection with her second complaint, did appellant raise before the District Court the objection that the amendment related back to the date of filing of the original complaint under Fed.R.Civ.P. 15(c). Nor was the point made on appeal. The issue is not without its complexities, *see Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980); *Ringrose v. Engelberg Huller Co.,* 692 F.2d 403 (6th Cir.1982), and we decline to consider it on our own motion, at this late point in the proceedings, as a basis for overturning the outcome of a nine-day trial.

*Brown v. Collins*, 402 F.2d 209, 212–13 (D.C.Cir.1968); *Barnes v. Avis Rent A Car System, Inc.*, 466 F.Supp. 907, 909–10 (D.D.C.1979). With regard to appellant's self-styled "sexual extortion" claim, we find no basis for appellant's argument that this sounds primarily in negligence, and is therefore subject to the District's three-year limitations period governing suits for negligent personal injury, *see Canterbury v. Spence*, 464 F.2d 772, 793 n. 126 (D.C.Cir.), *cert. denied*, 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972). "Extortion" assumes coercive intent rather than negligence. A more likely possibility is that the claim comes within the District's three-year statute governing actions "for which a limitation is not otherwise specifically prescribed," D.C.Code § 12–301(8). To the extent, however, that the claim of "sexual extortion" rests upon activities such as disrupting Bouchet's work and threatening her with the loss of her job unless she provided sexual favors, we have not found, and have not been cited by appellant, any precedent in D.C. cases rendering such activities actionable, or any indication that the D.C. courts are moving in that direction. We cannot create a new tort on behalf of the District in this diversity action. *See Clark v. World Airways, supra*, 24 Fair Empl.Prac.Cas. at 306. In any case, even if such activities were independently actionable, the extortion alleged in the present case involved substantial elements of assault and defamation, for which tortious conduct a one-year statute is specifically provided, which might well govern the whole.

▇ The only remaining question is whether the statute of limitations was tolled by the assertion of the tort claims in the original complaint, which was filed within the one-year period. Again, we must look to the law of the District of Columbia to determine whether the pendency of a claim that is later involuntarily dismissed without prejudice operates to interrupt the running of the limitations period. *Walko Corp. v. Burger Chef Systems, Inc.*, 554 F.2d 1165, 1171 (D.C.Cir.1977). Although there is no District of Columbia

law directly on point, Chief Judge Robinson's opinion in *Dupree v. Jefferson*, 666 F.2d 606 (D.C.Cir.1981) (which relied upon the reasoning of the District of Columbia Court of Appeals' opinion in *York & York Construction Co. v. Alexander*, 296 A.2d 710, 712 (D.C.1972)), resolved the issue: "[U]nder District of Columbia law the pendency of an action involuntarily dismissed without prejudice does not operate to toll the running of the statute of limitations." *Dupree, supra*, 666 F.2d at 611. Since appellant's earlier attempt to join the state-law tort claims to her Title VII action was dismissed for lack of subject matter jurisdiction, a dismissal without prejudice, the District of Columbia statute was not tolled.

Just as the statute of limitations ground we have just discussed supports Judge Penn's denial of appellant's motion to amend the first complaint, it also supports his grant of summary judgment dismissing the second complaint, which was filed 21 days later. That complaint was virtually identical to the portion of the amended complaint dealing with the state-law tort claims.

## IV

▇ Having decided that appellant is not entitled to prevail on her jury-trial claims, we address briefly her substantive challenges to Judge Penn's findings of fact and conclusions of law on the Title VII claim. After nine days of trial, Judge Penn found that, while the evidence suggested that "Johnson was attracted to" the appellant and that "he flirted with her on several occasions," it did not establish that any sexual advances or demands were made and "failed to prove that she was the victim of sexual harassment by Johnson or any other member or official of NUL." Civil No. 78–2138, Memorandum, Findings of Fact and Conclusions of Law at 9 (Mar. 3, 1982). Judge Penn also found specifically that appellant was not fired because of her refusal to accede to Johnson's sexual

advances, but because her performance was entirely unsatisfactory.

Findings of fact by the trial court shall not be set aside on appeal unless "clearly erroneous," and "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P. 52(a). We must also affirm the trial court's ultimate finding on the existence of discrimination "if the so-called 'subsidiary facts' are not clearly erroneous, if the inferences drawn from them are reasonable, and if the findings and inferences reasonably support the 'ultimate' factual finding on discrimination." *Bundy v. Jackson*, 641 F.2d 934, 950 (D.C.Cir.1981). After a careful review of the record, we conclude that those standards were met here.

We have also considered and also find meritless appellant's other contentions, some of which raised theories of liability not argued to the trial court, which do not warrant discussion.

*Judgments affirmed.*