James H. Boomer, J.
When plaintiff Jacqueline Walker purchased an automobile from the defendant McEvoy Dodge, she signed a retail installment contract which was assigned by McEvoy Dodge to the defendant Security Trust Company. Plaintiff brings this action against McEvoy Dodge and Security Trust Company alleging in the first cause of action, that the retail installment contract in many respects violated the *616 provisions of the Federal Consumer Protection Act, also known as the Federal Truth in Lending Act (US Code, tit 15, § 1631 et seq.), and the regulations thereunder (12 CFR 226.6, 226.8) and, in the second cause of action, that the defendants violated the provisions of the New York State Motor Vehicle Installment Sales Act (Personal Property Law, § 301 et seq.). Plaintiff moves for summary judgment on both causes of action.
FIRST CAUSE OF ACTION — VIOLATIONS OF THE FEDERAL CONSUMER PROTECTION ACT
The complaint, in the first cause of action, alleges that the defendants violated the Federal Consumer Protection Act in numerous respects. Among other violations, it charges that the retail installment contract included in the lump sum "cash price” a $30 fee to be paid for the title and registration of the automobile and a $10 document fee, which fees were neither separately disclosed nor included in the finance charge. It is claimed this violates the Federal Reserve Board Regulations (12 CFR 226.2 [i]; 226.8 [c]; 226.4 [b]).
It follows from a reading of these regulations that the license fee and the document fee cannot be included in the cash price, but they must either be included in the finance charge or separately disclosed. The defendants argue that since these charges would be made to a purchaser regardless of whether the purchase was a cash or credit transaction, the charges have no bearing on the extension of credit and need not, therefore, be separately disclosed or included in the finance charge. This argument was answered in the case of Meyers v Clearview Dodge Sales (384 F Supp 722, 725) where the court stated "This argument, however, fails to come to grips with the clear requirements of Regulation Z. Section 226.8 (c) (4) states that in the case of a credit sale 'all other charges, individually itemized, which are included in the amount financed but which are not part of the finance charge’ must be disclosed on the disclosure statement. The sale in question was a credit sale; the 'Documentary Service Fee’ was included in the amount financed and was not part of the finance charge. Thus, the failure to individually itemize this fee on the disclosure statement constitutes a violation of the Truth-In-Lending Act.” See, also, Starks v Orleans Motors (372 F Supp 928, 932, affd 500 F2d 1182) where the court referring to license, title and registration fees stated, "The *617 options are clear; nowhere is there allowance for inclusion within the cash price.”
I hold, therefore, that the defendants have violated the Federal law and regulations by including in the cash price on the retail installment contract the charges for license, title and document fees.
The defendant Security Trust Company of Rochester claims that it cannot be charged with this violation since the violation is not apparent on the face of the retail installment contract. Security Trust Company cites section 1614 of title 15 of the United States Code which provides: "Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter which may be brought against the original creditor in any credit transaction may be maintained against any subsequent assignee of the original creditor where the violation for which the alleged liability arose is apparent on the face of the instrument assigned unless the instrument is involuntary.”
This section was added by Public Law 93-495 which became effective October 28, 1974. The retail installment contract in this case was executed on April 5, 1974 before the effective date of this amendment. Prior to the amendment it was held that where the finance company or bank regularly uses an automobile dealer as a conduit through which to place installment sales contracts with purchasers, the bank is deemed a "creditor” as defined in subdivision (f) of section 1602 of title 15. That subdivision refers to a creditor as one who regularly extends or arranges for the extension of credit. Subdivision (f) of section 226.2 of the regulations (12 CFR 226.2 [f]) states that " 'arrange for the extension of credit’ means to provide or offer to provide consumer credit which is or will be extended by another person under a business or other relationship pursuant to which the person arranging such credit receives or will receive a fee, compensation, or other consideration for such service or has knowledge of the credit terms and participates in the preparation of the contract documents required in connection with the extension of credit.” The conceded facts here are that the bank received a fee for arranging the credit, had knowledge of the credit terms and participated in the preparation of the contract documents. Therefore, it was a creditor within the meaning of the Truth-in-Lending Act and was liable for any violation of that act whether the violation appeared upon the face of the installment credit contract or *618 not. The amendment, enacted after the date of the installment contract, could not affect any cause of action that had already accrued to the plaintiff. Further, I hold that the amendment was not designed to overrule the prior holdings, but was designed to extend liability to assignors who had not initially participated in the credit arrangement.
Nor may the defendant bank rely upon section 1641 contained in the original act. That section provides in substance that in an action against any subsequent assignee of the original creditor, the written acknowledgment of receipt by a consumer of the disclosure statements shall be conclusive proof of the delivery of that statement and "unless the violation is apparent on the face of the statement, of compliance with” the provisions of the Truth- in-Lending Act. Where the bank uses the seller as a conduit for its financing arrangements, the bank is considered, for the purposes of the Truth-in-Lending Act, not merely an assignee but as the "true creditor”. Security Trust’s argument here is the same as that made by Chrysler Credit Corporation in the case of Meyers v Clearview Dodge Sales (384 F Supp 722, 728-729, supra) where the court stated: "Chrysler Credit strenuously argues that it is merely a 'subsequent assignee’ of the plaintiff’s note and, as such, entitled to the limited protection of 15 U.S.C. § 1641. Several courts have relied upon a 'conduit’ theory to reject Chrysler Credit’s argument. Under the 'conduit’ theory, a finance company such as Chrysler Credit will be considered a creditor 'when the seller merely serves as a "conduit” for placing the finance companies’ contracts with consumers and then regularly assigns the contracts to the finance companies.’ (Philbeck v. Timmers Chevrolet, Inc., 361 F. Supp. 1255, 1260 (N.D. Ga. 1973), rev’d on other grounds, 499 F. 2d 971 (5th Cir. 1974); Garza v. Chicago Health Club, 347 F. Supp. 955; Starks v. Orleans Motors, Inc., 372 F. Supp. 928, affd. 500 F. 2d 1182; Owens v. Modern Loan Co., CCH Consumer Credit Guide, Para. 99,099 (W.D. Ky. 1972). In construing a piece of remedial legislation such as the Truth-in-Lending Act, designed to protect consumers, courts must focus on the substance of a transaction rather than its mere form. The 'conduit’ theory seeks to accomplish just that. All three parties to this transaction were fully aware at the time of the purchase that Chrysler Credit was the true creditor. The forms used by Clearview were prepared by Chrysler Credit. Further, it was necessary for Clearview to obtain credit approval for the plaintiff from *619 Chrysler Credit or one of the other lenders with whom it regularly dealt before agreeing to the sale. In such a situation, where the seller works so closely with the finance company, the latter must be considered a 'creditor’ within the definition of the Act.”
The Meyers case is squarely in point here for it was there held that the credit company under the "conduit” theory was liable for the inclusion of the license and registration fees in the cash price. This violation was not apparent upon the face of the disclosure statement. Also directly in point in this respect is Starks v Orleans Motors (372 F Supp 928, affd 500 F 2d 1182, supra).
Summary judgment is granted in favor of the plaintiff against the defendants on the first cause of action in the amount of $1,000.
Plaintiff also requests attorney’s fees under section 1640 of title 15. That section provides that the defendant, for a violation of the act, shall be liable to the consumer in an amount equal to the sum of twice the amount of the finance charge not to exceed $1,000 and "in the case of any successful action to enforce the foregoing liability, the costs of the action together with the reasonable attorney’s fee as determined by the court.” Plaintiff in this case was represented by the Monroe County Legal Assistance Corporation. The attorney from that corporation states in his memorandum: "The Supreme Court has in fact recognized that such awards (legal fees) are part of the newly organized legal services corporation funding mechanism in Alyeska Pipeline Service Co. v. Wilderness Society, 95 S. Ct. 1612, 1624 n. 36. Indeed, the cases providing for awards to legal services projects in Truth-in-Lending cases are many. See Jones v. Seldon’s Furniture Warehouse, Inc., 357 F. Supp. 886; Doggett v. Ritter Finance Co., 384 F. Supp. 150; Kasey v. Albin Used Cars, CCH Consumer Credit Guide, par. 709 (W. D. Ky. 1974); Settle v. Mallicott Auto Sales, Inc., CCH Poverty Law Reporter, par. 16, 897. The Court’s attention is also directed to a discussion of attorney’s fee awards to legal services offices in Townsend v. Edelman, 518 F. 2d 116, at 122 and Awards of Attorney’s Fees to Legal Aid Offices, 87 Harvard Law Review 411.” I see no impediment to the awarding of attorney’s fees to a plaintiff represented by the Monroe County Legal Assistance Corporation or by a legal aid society, provided that the plaintiff, if successful, is obligated to pay attorney’s fees. The statute as it *620 reads makes the defendant liable to the plaintiff for attorney’s fees. In my opinion if there had been a prior agreement between the plaintiff and the Monroe County Legal Assistance Corporation that the plaintiff, if successful, would pay attorney’s fees, then an award of an attorney’s fee in this case would be proper. Summary judgment for reasonable attorney’s fees is denied and this portion of the first cause of action may be severed.
THE SECOND CAUSE OF ACTION — VIOLATIONS OF THE NEW YORK STATE MOTOR VEHICLE SALES ACT (PERSONAL PROPERTY law, § 301 et seq.)
In the second cause of action the plaintiff charges the defendants with violations of the New York Motor Vehicle Installment Sales Act (Personal Property Law, § 301 et seq.), "in the following respects: (a) by willfully charging a finance charge which is greater than the maximum authorized by law, as set forth in the New York Personal Property Law, § 303; (b) by willfully failing- to make those disclosures which are required by the act of Congress entitled Truth-in-Lending Act and the regulations thereunder”.
Summary judgment on this cause of action is denied upon the ground it cannot be said that as a matter of law the violations charged were willful. Plaintiff’s attorney in his brief states "The Court of Appeals has held, both in criminal and civil cases, that' "wilful” does not mean that a person does an act motivated by feelings of spite, malice or hate. It merely means intentionally doing an act and knowing that the act is being done’. People v. Broady, 5 N Y 2d 500, 505 (1959); Matter of Old Republic Insurance Company v. Thacher, 12 N Y 2d 48, 55 (1962). See also, Reetz, Inc. v. Stackler, 24 Misc 2d 291 (Sup. Ct. Nassau Co. 1960); 19 Am. Jur. 102.”
In People v Broady (5 NY2d 500, 505, supra), the defendant was charged with a violation of a section of the Penal Law that made it a felony to " 'unlawfully and willfully cut, break, tap, or make connection with any telegraph or telephone line’ ”. The holding was that "willful” did not mean that the act must be motivated by feelings of spite, malice or hate, but willful in that case was held to mean merely intentionally doing an act and knowing that the act is being done.
In Matter of Old Republic Ins. Co. v Thacher (12 NY2d 48, 56), the question was whether the petitioner was properly found by the superintendent of insurance to be in. violation of *621 certain sections of the Insurance Law which sections required the petitioner to obtain approval of its premium charges before issuing insurance policies. The Court of Appeals stated: "it is our opinion that the word 'wilful* as used in section 225 of the Insurance Law means no more than intentional and deliberate. Upon this view, there can be no doubt that the Superintendent was fully warranted in finding that respondent had 'wilfully* violated the new statutes. Respondent was fully apprised of appellant’s proper position that delivery of the policies constituted a violation of the amended statutes themselves, which in clear terms provided for approval of rates as well as forms in policies 'to be issued’ * * * Fully aware of the risk involved, and after having been duly cautioned by the Superintendent, respondent nonetheless accepted the risk and disobeyed the statutes”.
Here, on this motion for summary judgment, it cannot be found as a matter of law that the violations were "intentional and deliberate”. There are no facts showing that the defendants were apprised that their actions might be in violation of the Federal Truth-in-Lending Act, or that they were fully aware of the risk involved.
In Reetz, Inc. v Stackler (24 Misc 2d 291), the defendant in a lien foreclosure action charged the plaintiff with a "willful” exaggeration of the lien in violation of section 39 of the Lien Law. It was there held (p 296) that the word willful meant "intentional and deliberate” and that the defendant failed to show that the claims of the plaintiff were "fictitious, groundless and fraudulent”.
The defendants cite other cases defining the word "willful”. In Abbate v Herbruck (199 Misc 923), a landlord was charged with a civil violation of the Federal Rent Control Act. The court there stated (p 925) that within the meaning of the act " 'willful* does not carry with it the connotation of a criminal intent, but alludes to attempts by the landlord to consciously disregard the law by retaining moneys it is unlawful to keep. (Howland v. Firoz Realty Corp., 72 N. Y. S. 2d 734, affd. 273 App. Div. 960; Manufacturers Trust Co. v. Arvin Chemists, 187 Misc. 38.)” The court found a willful violation stating that there was "evidence augmenting a finding of a conscious disregard of regulations.”
Boyce v Greeley Sq. Hotel Co. (228 NY 106) involved the measure of damages in an action by a guest at a hotel who was assaulted and abused by hotel employees. The court in *622 permitting the damages for bodily pains, weakness, hysteria, loss of appetite and insomnia stated (p 111): "In the case here the acts of the defendant were wrongful and violative of the duty imposed by law. They were committed in virtue of a deliberate intent and design and were willful and not merely negligent. A willful injury means intentionally doing the act which is calculated or adapted to cause the injury, with design to inflict injury or with disregard of the natural consequences of the act.”
In Barbato v Tuosto (38 Misc 2d 823), it was held that to be "willful” within the meaning of the disclosure provisions of the former Civil Practice Act "the failure to comply must be contumacious.”
It appears from the cases that the meaning of the word "willful” depends upon the context in which it is used. I hold that here the term "willful” means more than just doing the act or failing to do the act required by the statute and regulations. It means an intentional and deliberate doing of the act or failure to do the act with a certain awareness on the part of the defendants. The awareness must be more than an awareness of the fact that a financing of a retail installment contract had been executed and an awareness of the terms of that contract. There must also be an awareness of the fact that that retail installment agreement failed to comply with the requirements of law, or an awareness of a substantial risk that it failed to comply. This is not to say that a defendant charged with a violation of the New York State Motor Vehicle Retail Installment Sales Act may escape the penalties of that act merely by pleading ignorance of the law. To prove a willful violation it should be enough to show facts from which it might be fairly inferred that the defendants, as reasonable businessmen, knew that what they were doing was in violation of the law or knew that there was a substantial risk of such a violation (Manufacturers Trust Co. v Arvin Chemists, 187 Misc 38, 39). In many cases this will be a question of fact. Since it cannot be said as a matter of law that the defendants willfully violated the provisions of the New York State Motor Vehicle Retail Installment Sales Act, summary judgment on this second cause of action is denied.