**Sylvan SILVERMAN, et al., Plaintiffs,**

v.

**Donald WEIL, et al., Defendants.**

**Civ. A. No. 85–2782.**

United States District Court,
District of Columbia.

May 19, 1987.

Steven Kramer, Philadelphia, Pa., for plaintiffs.

Joseph Semo, Seifman, Semo Slevin and Marcus, Terrence O'Donnell, Dianne Smith, Washington, D.C., for defendants.

## MEMORANDUM ORDER

BARRINGTON D. PARKER, District Judge.

Defendants Donald Weil, Frank Stefanou and Frank & Company have filed Motions to Dismiss Plaintiffs' Third Amended Complaint. The defendants' motions track the same arguments which formed the basis for this Court's dismissals of the plaintiffs' three earlier complaints.[1] In each of the prior efforts, the Court indulged the plaintiffs and granted leave to correct the defects plaguing the prior attempts and to file a legally sufficient complaint. However, the plaintiffs have failed for the *fourth* time to remedy their deficient pleading. Their inability to craft an adequate complaint compels this Court to dismiss the Third Amended Complaint this time, with prejudice.

## 1. BACKGROUND

The genesis of this complaint arises out of the financial collapse of the limited partnership, TMG II and the resulting financial loss to plaintiffs who were investors in that

---

1. The Court dismissed the plaintiffs' original complaint on November 27, 1985 for failure to prosecute. After the Court granted plaintiffs' motion to reopen on March 26, 1986, it dismissed the plaintiffs as improper parties and dismissed the malpractice count against Frank & Company for failure to state a claim. On July 14, the Court dismissed the plaintiffs' First Amended Complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) and for failure to comply with the particularity requirements of Fed.R.Civ.P. 9(b). The Court dismissed the plaintiffs' Second Amended Complaint for these same reasons on December 17, 1986.

partnership.[2] TMG II was the victim of a fraudulent tax scheme conceived of and perpetrated by one of its general partners, Edward Markowitz. In 1985, Markowitz pled guilty to defrauding numerous partnerships, including TMG II.[3] In his plea, he implicated unnamed accountants and lawyers who allegedly helped in developing his fraudulent schemes. Armed with this "information," plaintiffs sought to recover their losses and sued all parties who were involved in the operation of TMG II and might have been involved in the "plot." Hence they instituted this action against Donald Weil, the only other general partner of TMG II and Frank Stefanou and his firm, Frank & Company, who performed accounting services for TMG II.[4]

This Court shares in the plaintiffs' sense of frustration at their financial loss. But, lawsuits are not instituted and won out of a mere sense of frustration or outrage. Plaintiffs must advance a claim against the party defendants upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). After four attempts, they have failed to do just that.

## 2. DISMISSAL COUNTS 1–4 AGAINST DONALD WEIL

Plaintiffs allege that Donald Weil exercised his fiduciary duties as general partner of TMG II in a negligent and/or grossly negligent manner. They also allege that Weil is liable for Markowitz's wrongdoings under a theory of agency/respondeat superior. Defendant Weil responds to these charges with a single defense: that his liability is established under the terms of the partnership agreement and that the agreement explicitly precludes any liability "except for fraud or willful misconduct." [5]

Under New York law,[6] the rights of the limited partnership are governed by the partnership agreement. *See Riveria Congress Associates v. Yassky*, 25 A.D.2d 291, 268 N.Y.S.2d 854, 855 (1966). In that case, the New York Court of Appeals concluded that the limited partners waived their rights to proceed against the general partners for self dealing when they agreed to a provision in the partnership agreement permitting the partners to engage in self dealing. Here, the plaintiffs willingly signed the TMG II agreement which explicitly releases the partners from any liability "except for fraud and willful misconduct," thus barring any actions based upon negligence or vicarious liability theories.

Plaintiffs have not attempted to distinguish *Riveria* nor have they advanced any reasons to convince this Court to take the extraordinary step, in light of *Riveria*, to dissolve the contract. As the Court in *Riveria* noted, limited partnerships, such as TMG II, are created to offer investment possibilities and tax shelters to individuals possessing substantial capital. Individuals

---

**2.** The plaintiffs Sylvan Silverman, *et al.*, are general partners in Lehigh Associates, a Pennsylvania partnership, which is in turn a limited partner in TMG II, a New York Limited Partnership. They lost both their equity in and expected future tax savings from their investment in TMG II.

**3.** Mr. Markowitz pled guilty to four counts relating to the manufacturing of fraudulent tax losses before Judge Morris Lasker in the Southern District of New York.

**4.** In the Second Amended Complaint, the plaintiffs also brought suit against the lawyer Joel Birkin and his law firm Reese, Broome & Diaz, who acted as counsel for both TMG II and Mr. Markowitz. However, the third party lawyers were dismissed on the grounds that Mr. Weil had already brought suit against them in the D.C. Superior Court. This existing suit stripped the limited partners of standing to proceed on behalf of the general partnership.

**5.** Specifically, the TMG II partnership agreement refers to the partners' limited liability in three different sections. Section IV(c)(2) provides:

> The General Partner will not be liable except for fraud or willful misconduct to the partnership or the limited partners, for an action taken or omitted by it.

Section II.01 provides:

> The General Partner shall not be liable to the Partnership or the Limited Partners for any act performed or omitted by it pursuant to the authority granted to it by this agreement, but only for fraud or willful misconduct.

Section II.01(c) stipulates that "No General Partner shall have any liability for negligence."

**6.** Since TMG II was established as a New York limited partnership, New York law governs the interpretation of all rights and liabilities under the agreement.

who invest in these limited partnerships are sophisticated investors capable of safeguarding their own interests. Since plaintiffs have failed to offer any compelling reasons for this Court to protect their interests, it refuses to intervene and strike down the contract. Accordingly, all four counts against Weil are dismissed as barred by the Partnership Agreement.

■ In a final effort to avoid dismissal, plaintiffs attempt to fit their complaint within the four corners of the partnership contract by alleging that Weil's gross negligence was so egregious as to constitute willful misconduct. However, for gross negligence to rise to the level of willful misconduct plaintiffs must show that Weil consciously intended to ignore his fiduciary duties with the knowledge that his breach would result in damage to the partners. *See Walker v. Security Trust Co.*, 85 Misc.2d 614, 379 N.Y.S.2d 308, 316 (N.Y. 1976); *Cohen v. Varig Airlines*, 62 A.D.2d 324, 405 N.Y.S.2d 44, 47 (N.Y.Ct.Ap.1978). Plaintiffs have not alleged that Weil had knowledge of Markowitz's fraudulent schemes.[7] If he were not aware of Markowitz's illegal activities, he could not have foreseen that his failure to monitor closely the partnership business would have resulted in the collapse of the partnership. His failure to keep a keen eye on the partnership was nothing more than a textbook case of negligence and as such is not grounds for suit.[8]

## 3. DISMISSAL OF THE THIRD AMENDED COMPLAINT AGAINST FRANK STEFANOU AND FRANK & COMPANY

Defendants contend that as limited partners in TMG II, plaintiffs have no standing to commence legal proceedings on behalf of the partnership. Plaintiffs agree that the rights of limited partners are circum-scribed, but urge this Court to recognize that limited partners may sue in a derivative action on behalf of the general partnership for malfeasance of the general partners.

The capacity of individuals acting in a representative capacity to sue and be sued is determined by state law. *See* Fed.R. Civ.P. 17(b). Plaintiffs have conceded that the law of the forum governs. However, the rights of limited partners to institute suits on behalf of general partnerships have not been clearly established in the District of Columbia. The only authority on point is a recent D.C. Superior Court decision where the court adopted the model of the shareholder derivative action and permitted limited partners to proceed with an action after they made a showing that the general partnership was disabled from instituting the action itself. *TMG II v. Reese, Broome & Diaz*, (C.A. 4570–86, Feb. 23, 1987). But there, the only general partner had been dismissed for defrauding the partnership and no one other than the limited partners could proceed with the action.

■ Even if the limited partnership were permitted to institute a derivative action on behalf of the general partnership, before they could proceed they must set forth their efforts to secure relief by the general partner or demonstrate that those partners are disabled from bringing the action themselves. *See* Revised Uniform Limited Partnership Act § 1003; *Klebanow v. New York Produce Exchange*, 344 F.2d 294 (2d Cir.1965). This threshold showing requires "strong allegations and proof of disqualification or wrongful refusal by the general partners … a mere difference of opinion would be nowhere near enough." *Id.* at 299. Plaintiffs have failed to make this threshold showing. They never contacted Weil and asked him to proceed against the

---

7. In their First Amended Complaint, plaintiffs included an aiding and abetting count against Mr. Weil contending that he participated in the fraudulent activities. However the Court dismissed this charge for failure to advance any allegation of Weil's involvement in or knowledge of the fraudulent scheme. The plaintiffs never reasserted this count.

8. After Weil discovered that Markowitz defrauded the partnership, he brought suit against Markowitz on behalf of the general partnerships. *See Weil v. Markowitz*, 108 F.R.D. 113 (D.D.C. 1985). This proceeding was settled pursuant to a Consent Order approved by Judge Louis Oberdorfer on October 2, 1985.

accountants, nor have they demonstrated that such efforts would have been futile. They merely rely on conclusory statements that Weil is disabled from instituting an action against the accountants because of unspecified conflict of interest.[9] However the "conflicts of interests" did not deter Weil from proceeding against Markowitz himself or the lawyers who provided services for TMG II. Plaintiffs have not advanced any reasons why Weil would be uniquely disqualified from proceeding against the accountants.[10] Without demonstrating that Weil is disabled from instituting an action, plaintiffs have no standing to proceed on behalf of TMG II. Their entire complaint against Frank Stefanou and Frank & Company must be and is dismissed.

### 4. DISMISSAL COUNTS 5 & 7

Counts 5 and 7 of Plaintiffs' Third Amended Complaint, charge defendants Stefanou and Frank & Company with malpractice for the allegedly negligent accounting services they rendered to TMG II and its general partners. Defendants raise the same defense to this count as that asserted by Weil. They argue that any such claims of negligence are barred by the provisions of the Partnership Agreement between TMG II and Lehigh Associates. For the same reasons that the negligence counts against Weil were dismissed, the Court dismisses counts 5 and 7 against the accountants.

■ Section 11.02(c) of the TMG II Partnership Agreement clearly states that the general partners of TMG II, and their agents, are not liable for mere negligence: "[n]o General Partner nor any affiliate or employee or agent of such General Partner shall have any liability for negligence." Paragraph 28 of plaintiffs' Amended Complaint states that Stefanou and Frank & Company "provided accounting services for

TMG II, Markowitz and Weil." Thus, these two defendants were agents of TMG II and its general partners. *See Johnson v. Bechtel Associates Professional Corp.*, 717 F.2d 574, 579 (D.C.Cir.1983), *rev'd on other grounds*, 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984) (an "agent is one who is authorized by another (principal) to act on his behalf"); Restatement (Second) of Agency § 1 (1958). Since defendants were agents of TMG II and its general partners, plaintiffs are barred from suing Stefanou and Frank & Company for negligence under the terms of the Partnership Agreement they entered into when Lehigh Associates became a limited partner in the TMG II partnership.

Plaintiffs argue that if the Court holds that the Partnership Agreement bars defendants' liability for negligence, the result will be that "professionals" will be "given a license" to commit malpractice. But, plaintiffs should have considered this issue before signing the partnership agreement. Their argument ignores the fact that (1) Lehigh and TMG II are contracting parties of relatively equal bargaining strength; (2) such parties may enter agreements excluding liability for the negligent acts of one of the parties, *see, e.g., LeSueur Creamery, Inc. v. Haskon, Inc.*, 660 F.2d 342, 352 (8th Cir.1981), *cert. denied*, 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982); *Marr Enterprises, Inc. v. Lewis Refrigeration Co.*, 556 F.2d 951, 956 (9th Cir.1977); *Posttape Associates v. Eastman Kodak Co.*, 537 F.2d 751, 755 (3rd Cir.1976); and (3) plaintiffs freely agreed to Section 11.02(c) of the Partnership Agreement. Accordingly, Counts 5 and 7 are dismissed as barred by the TMG II partnership agreement.

### 5. DISMISSAL COUNTS 6 & 8

■ Counts 6 and 8 of plaintiffs' Third Amended Complaint allege that Frank Ste-

---

9. Paragraph 17(a) of the complaint states that "the TMG II General Partners' misconduct has disabled them from bringing this action on behalf of the limited partners or investors because of apparent conflict of interest. Accordingly a demand upon Weil will be futile."

10. Weil claims in 1983 that he specifically consulted with counsel to determine whether to proceed against the accountants and is presently revisiting that decision. *See* Supplemental Memorandum in Support of Defendant Weil's Motion to Dismiss Plaintiffs' Second Amended Complaint.

fanou and his company aided and abetted Markowitz in his fraudulent schemes. The Court previously dismissed these allegations because plaintiffs failed to meet the pleading requirements of Fed.R.Civ.P. 9(b) which require that allegations sounding in fraud be stated with particularity. *See* Order, Dec. 17, 1986. After three attempts, plaintiffs still fail to allege the aiding and abetting charges with the requisite particularity necessary under the Rule. Plaintiffs respond with the same arguments advanced in the earlier stages of this proceeding,—that their complaint is sufficiently detailed to meet the purposes behind the special pleading requirements to place defendants on notice of the alleged wrong.[11]

■ To meet the pleading requirements of an aiding and abetting charge sounding in fraud, plaintiffs must demonstrate and do so *with particularity*, that: (1) the party whom the defendant aided, Markowitz, performed a wrongful act that caused injury; (2) the defendants were aware of their role contributing to Markowitz's fraud when they rendered their accounting services; and (3) the defendants knowingly and substantially assisted Markowitz in his fraud. *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir.1983); *Decker v. Massey Ferguson*, 681 F.2d 111 (2d Cir.1982).

■ Generally, "the complaint must state the time, place, and content of the false misrepresentation, the fact misrepresented and what was obtained or given up as a consequence of the fraud." *Seligson v. Plum Tree, Inc.*, 361 F.Supp. 748, 756 (E.D.Pa.1973). *See also Decker v. Massey-Ferguson, Ltd.*, 681 F.2d at 117; *Reingold v. Deloitte Hasksins & Sells*, 599 F.Supp.

1241, 1266 (S.D.N.Y.1984). Plaintiffs have not stated the time, place, or content of Markowitz's alleged misrepresentations. Although the Markowitz guilty plea to defrauding his numerous partnership holdings confirms *his* involvement in these fraudulent activities, the failure to specify any particular transaction makes it difficult for defendants to identify which fraudulent transactions they were allegedly involved in, so that they could, in turn, prepare their defense.[12]

Even if Markowitz's guilty plea were sufficient to satisfy the first element of the aiding and abetting count, plaintiffs have failed to allege adequately the remaining elements of aiding and abetting. In paragraphs 42–43 of their Third Amended Complaint, they make only the conclusory allegations that because defendants performed accounting services during the time period Markowitz perpetrated his fraud, defendants "were aware of the fraudulent scheme engaged in by Markowitz" and that they "knowingly conspired with and assisted Markowitz and others in preparing financial statements and audit reports for the period 1980 to 1982 that were false, fraudulent, and misleading."

The mere fact that the accountants performed services for TMG II during the time period that Markowitz defrauded TMG II is, at best, a weak basis for concluding that they were the unnamed accountants whom Markowitz referred to in his guilty plea as helping him devise his strategies.[13] Plaintiffs' allegations against the accountants are more akin to negligence claims— that reasonably competent accountants

---

11. Rule 9(b) serves *three* purposes: (1) it gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests, thus enabling the defendant to prepare a defense; (2) it protects the defendant from harm to his reputation or goodwill that might result from charges of fraud; and (3) it minimizes the number of strike suits. *Reingold v. Deloitte Haskins & Sells*, 599 F.Supp. 1241, 1266 (S.D.N.Y.1984).

12. Even the plaintiffs' chief case, *Seville Industry v. Southwest Machinery*, 742 F.2d 786 (3rd Cir.1984) relied on for the proposition that Rule 9(b) should not be applied in an exacting manner, would not support going forward with

plaintiffs' vaguely pleaded complaint. In *Seville,* the court was careful to note that although the defendants failed to identify the time, place and content of the alleged fraud, it appended a list which identified with specificity the pieces of machinery which were the subject of the fraud.

13. When he pled guilty, Markowitz admitted that he "held numerous meetings here in the Southern District of New York with attorneys and accountants during which time we devised and executed documents and strategies." *See* Plaintiffs' exhibit B at 7.

should have discovered Markowitz's fraud, but their negligence cannot be transformed into allegations of aiding and abetting without a specific showing that *these* accountants knew of and substantially assisted Markowitz in his schemes. *See Decker v. Massey-Ferguson, Ltd.*, 681 F.2d at 120 (generalized statements concerning accountants' knowledge or reckless disregard of the corporation's "untrue" statements of income or "wrongful activities" did not satisfy the requirements of Rule 9(b)); *Reingold v. Deloitte Haskins & Sells*, 599 F.Supp. at 1269–70 (an aiding and abetting pleading must plead the events giving rise to a "strong inference" that defendants had knowledge of the primary violation, the factual basis for the allegations that defendants "substantially participated" in the alleged fraud, the factual basis from which plaintiff infers defendants' independent duty to act, and specific reference to the primary violations allegedly aided or abetted).

### 6. DISMISSAL COUNT 9

Count 9 attempts to allege a claim against the accountants for violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1982). Defendants argue that the plaintiffs have not pled properly one single element of the multiple elements necessary to establish a RICO claim. But, the Court need not delve into the defendants' broad based objections to plaintiffs' RICO charge. Because plaintiffs' RICO count sounds in fraud, it falls for the same reasons that plaintiffs' aiding and abetting charges are dismissed. To proceed with their RICO count, plaintiffs must plead the predicate fraud with sufficient particularity required by the civil procedural rules. *See Doxie v. Ford Motor Co.*, 603 F.Supp. 624, 627-28

(S.D.Georgia 1984); *Eaby v. Richmond*, 561 F.Supp. 131, 135–137 (E.D.Pa.1983). Plaintiffs' failure to identify the specificities of defendants' fraudulent scheme or their role in the fraudulent activities, compels this Court to dismiss the RICO charge.

### CONCLUSION

Counsel for plaintiffs has been given four opportunities to draft an adequate complaint. In each instance, on clear notice of the insufficiency of their claims, he has failed to correct the problems. The Third Amended Complaint is still as seriously deficient, as the first three. Moreover, throughout these proceedings, plaintiffs' counsel has made gross and misleading misrepresentations in various pleadings and statements to this Court.[14] These misstatements taken in conjunction with a demonstrated inability to file an adequate complaint compel the Court to dismiss the present complaint with prejudice.

### ORDERED

That the complaint of Sylvan Silverman and other plaintiffs in this proceeding against Donald Weil and others be and is dismissed with prejudice.

---

**14.** For example, plaintiffs originally filed their complaint identifying the parties as limited partners in TMG II. However they subsequently filed an affidavit claiming that the four named plaintiffs were general partners in TMG II. Plaintiffs' counsel offered no explanation for this discrepancy which caused unnecessary confusion as to the plaintiffs' standing to sue. Plaintiffs' counsel also misrepresented the nature of Edward Markowitz's guilty plea claiming that he specifically pled guilty to conspiring with defendant Frank Stefanou (Second Amended Complaint ¶ 11F). However, Markowitz never identified any accountant in his guilty plea. In addition neither the information nor the plea agreement referred to a conspiracy with any named accountant. These were only a few of the numerous mischaracterizations made by plaintiffs.