Thomas F. DOOLEY, Plaintiff,

v.

UNITED TECHNOLOGIES CORP. United Technologies Holding Corp., United Technologies International Operations, Inc. (UTIO), Sikorsky Aircraft, Sikorsky Aircraft, Saudi Arabia, Ltd., Sikorsky International Products, Inc. (SIPI), Westland Group PLC, Westland Helicopters Ltd., Westland Incorporated, Eugene Buckley, Robert F. Daniell, Joseph Homza, Ibrahim A. Al–Namlah, William F. Paul, Clement Charles Peterson, Olin E. Smith, Olin E. Smith & Associates, Inc., Thimar Al–Jazirah Corp., Thimar Aviation Supply Co., Robert Zincone, Defendants.

Civ. A. No. 91–2499.

United States District Court,
District of Columbia.

May 11, 1993.

Michael J. Madigan, Robertson T. Park, Michael J. Mueller, Akin, Gump, Hauer & Feld, Kenneth Michael Robinson, Cooter & Gell, Washington, DC, for plaintiff.

William D. Iverson, Deborah A. Garza, Jeffrey B. Coopersmith, Covington & Burling, Washington, DC, for United Technologies Corp.; United Technologies Holding Corp.; United Technologies Intern. Operations, Inc. (UTIO); Sikorsky Aircraft; Sikorsky Aircraft, Saudi Arabia; Sikorsky Intern. Products, Inc. (SIPI); Eugene Buckley; Robert F. Daniell; Joseph Homza; William F. Paul; Clement Charles Peterson; Robert Zincone.

John D. Aldock, Laura S. Wertheimer, Shea & Gardner, Washington, DC, for Olin E. Smith, Olin E. Smith & Associates, Inc.

Thomas F. Cullen, Jr., Christopher F. Dugan, Jones, Day, Reavis & Pogue, Washington, DC, for Westland Incorporated.

## MEMORANDUM

JUNE L. GREEN, District Judge.

Plaintiff Thomas Dooley seeks leave to amend the Complaint in a motion filed on January 25, 1993. The primary purpose of Plaintiff's motion is to re-plead allegations against Frank E. Basil, Inc. (Basil).[1] Plaintiff brought his action against Basil and other defendants in October 1991. On June 17, 1992, the Court ordered the Complaint dismissed without prejudice as to Defendant Basil because Plaintiff failed to state a claim upon which relief could be granted. *See Dooley v. United Technologies Corp.,* No. 91–2499, 1992 WL 167053, (D.D.C. June 17, 1992). For the reasons stated below, the Court finds that Plaintiff's proposed amendment corrects the deficiencies of the Complaint, that Basil will not be prejudiced by allowance of the amendment and that leave should therefore be granted pursuant to Federal Rule of Civil Procedure 15 (Rule 15).

## I. FACTS

On October 4, 1991, Plaintiff filed a Complaint against Basil and numerous defendants, including United Technologies Corporation (UTC), alleging violations of the Racketeer Influenced and Corrupt Organizations Act, Title 18, United States Code, sections 1961–1968 (RICO), and supplemental state law claims. As the allegations of the Complaint are set out in depth in previous opinions,[2] the Court will summarize here only the facts pertinent to this motion.

Plaintiff Dooley's complaint sets forth allegations of a conspiracy to bribe representatives of the Saudi Arabian government in order to procure contracts for the sale of

---

**1.** The Westland defendants filed a motion to dismiss the civil conspiracy claims of the "first amended complaint" on February 8, 1993. This Memorandum does not dispose of that motion.

**2.** *Dooley v. United Technologies Corp.,* No. 91–2499, 1992 WL 167053, (D.D.C. filed June 17, 1992); *Dooley v. United Technologies Corp.,* 803 F.Supp. 428 (D.D.C.1992).

military equipment. Dooley alleges that his employer, defendant Sikorsky Aircraft ("Sikorsky"), and its parent corporation, UTC, actively solicited the Saudi Arabian Government throughout the late 1970's as a customer for its helicopters. Dooley further alleges that in 1986, the Saudi Arabian Ministry of Defense and Aviation ("MODA") finally agreed to purchase UTC helicopters. Dooley claims that to obtain the Saudi's business, UTC agreed to pay substantial bribes to Saudi Arabian officials and businessmen.

The conspiracy allegedly developed through tacit agreement among high-level UTC corporate employees and the Saudi Arabian Ambassador to the United States, His Royal Highness ("HRH") Prince Bandar bin Sultan ("Prince Bandar"), and Prince Bandar's Saudi Arabian associates. The scheme described by plaintiff Dooley involved the sale of 13 UTC-manufactured Black Hawk helicopters—and implicit promises for future sales—to the Saudi Arabian Ministry of Defense and Aviation ("MODA") through the Foreign Military Sales ("FMS") program administered by the Department of Defense. In exchange for the sales, UTC agreed to pay bribes to HRH Prince Khalid bin Sultan ("Khalid") and HRH Prince Fahad bin Sultan ("Fahad"), sons of MODA Minister Prince Sultan bin Abdul Aziz bin Saud, and Saudi Arabian businessman Ibrahim A. Al–Namlah ("Namlah").

The bribes were to be funneled to the Saudi royalty through a business arrangement linking a Washington, D.C.-based corporation, Frank E. Basil, Inc., with a Saudi Arabian-based corporation, Thimar Al–Jazirah Corporation ("Thimar"). Through the influence of Saudi Arabian officials, including Prince Bandar, defendant Sikorsky was awarded a collateral contract for Maintenance Support Services ("MSS") to the FMS sale, without the normal competitive bidding of the contract. The UTC defendants then, in turn, contracted out for Personnel Support Service ("PSS") under the MSS contract, to the Basil–Thimar joint-venture. This mechanism allegedly allowed the UTC defendants to funnel bribes to Namlah and his "business partners", Khalid and Fahad, while circum-

venting United States Government oversight and audit procedures.

Namlah, the Saudi businessman designated by Prince Bandar to be UTC's "contact" in Saudi Arabia, is president and part-owner of Thimar. It is alleged that he used the payments from the Basil–Thimar joint venture to pay off Khalid and Fahad and to take a "cut" for himself.

*Basil's Motion To Dismiss*

On March 24, 1992, Basil moved to dismiss for failure to state a claim upon which relief may be granted. The Court granted Basil's motion finding that Basil played an unwitting role in a conspiracy developed and advanced by others. The Court held the allegations of the Complaint supported no "allowable inference that Basil assented to the alleged conspiracy or was aware of its role in the bribery scheme and knowingly and substantially assisted the perpetrators." *Dooley v. United Technologies Corp.,* No. 91–2499, 1992 WL 167053, *3, (D.D.C. filed June 17, 1992), at 7 (citation omitted).

*Plaintiff's Motion For Leave To Amend*

On January 25, 1993, the Plaintiff filed the instant motion for leave to Amend the Complaint to include new allegations against Basil. Plaintiff asserts in the motion that discovery has yielded new evidence demonstrating that Basil played a knowing role in the conspiracy and substantially assisted the perpetrators. For example, Plaintiff seeks to plead, *inter alia,* (1) that Basil was a full partner with Thimar in carrying out the PSS project, as demonstrated in the document entitled "Supplemental Co-operation Agreement Between Frank E. Basil, Inc. And Thimar Al–Jazirah Corporation;" (2) that that arrangement lasted until mid-October, 1989 when Basil assigned its interest in the joint-venture to Thimar which then subcontracted the PSS project to Basil; (3) that Basil was involved in the negotiations between defendant Sikorsky International Products, Inc. (SIPI) and Thimar to set up the joint venture and Basil managed and financed the entire PSS project for its first three years; (4) that Basil transferred hundreds of thousands of dollars to Thimar from 1989 to 1991 without any written agreement for repayment; and (5) that Basil was aware that Thimar's Presi-

dent and sole-owner, Namlah, had a close relationship with Prince Bandar and that Bandar approved the contract between Basil and Thimar. *See* Pl.'s Mem., pp. 3–17 and Pl.'s Reply, pp. 14–23.

## II.  DISCUSSION

The Plaintiff's request for leave to amend the Complaint is governed by Rule 15(a) of the Federal Rules of Civil Procedure which provides that "... a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).

In *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court provided guidance for determining when "justice" requires that leave to amend be granted:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Id.* at 182, 83 S.Ct. at 230. The parties dispute whether any of the reasons cited in *Foman* for denying leave to amend are present in this matter.

Basil argues that Plaintiff's amendment is futile because even the new allegations fail to state a claim. Basil further argues that it would be unduly prejudiced in defending against the proposed Amended Complaint because Basil did not participate in the discovery conducted after the June 17, 1992 order of dismissal.

More important, Basil contends that the June 17, 1992 dismissal order removed Basil as a party from the case. There are two consequences to that dismissal, Basil argues. First, because the original complaint was defective, the statute of limitations was not tolled on the claims against Basil. Thus, the proposed amendment is now time-barred and "futil[e]." *Foman, supra.* Second, Basil argues that Rule 15(c) precludes any addition

of Basil to the case via amendment, because Rule 15(c) only permits the addition of a party in cases where the identity of the party was initially mistaken, and that is not the case here.

Plaintiff rejects Basil's arguments. First, Plaintiff argues that the amendment cures any deficiency in the original pleading. Plaintiff also asserts that Basil is not prejudiced because most of the discovery conducted in Basil's absence does not affect Basil's interests and because Basil has sufficient time to prepare its case. Second, Plaintiff argues that despite the Court's order dismissing Basil, the action has not been terminated as to Basil pursuant to Rule 54(b). The only relevant inquiry, according to Plaintiff, is whether or not the amendment relates back to the original complaint under Rule 15(c), without any need to consider the terms of the rule respecting the addition of new parties.

For reasons which follow, the Court finds that Plaintiff's amendment cures the deficiency of its original complaint. In addition, the Court finds no merit in Basil's opposition and concludes that the Plaintiff's request for leave to amend the Complaint should be granted.

*Plaintiff's Amendment*

▆ Plaintiff's complaint as to Basil was originally dismissed because it lacked allegations that Basil played a knowing role in the alleged bribery scheme. *Dooley v. United Technologies Corp.,* No. 91–2499, 1992 WL 167053, (D.D.C. June 17, 1992). Plaintiff's proposed amendment cures this deficiency.

Plaintiff alleged in the Complaint that UTC and other defendants conspired to funnel bribes to Saudi Arabian officials by way of the MSS contract to be performed by SIPI. As part of the MSS contract, SIPI contracted with Namlah's company, Thimar, for the PSS work and Thimar, in turn, subcontracted the PSS work to Basil. Complaint, ¶¶ 34, 189, 214. The alleged bribes were taken from the contract funds paid to Thimar, and Basil only performed as a subcontractor. *Id.* Thus, Basil is not alleged to have played any part in setting up or knowingly carrying out the bribery scheme.

The amendment, however, presents new allegations from which it may be inferred that Basil knowingly assented to and furthered the bribery scheme. For example, contract documents relating to the Thimar and Basil joint venture demonstrate that Basil was not merely a subcontractor, but functioned as a full partner with Thimar in performing the PSS contract and in handling the contract funds. The agreements, dated November 4, 1988, entitled "Joint Venture Agreement" and "Supplemental Co–Operation Agreement," set up a joint venture between Basil and Thimar, known as the Support Services Group (SSG). Amendment, ¶ 207.1. The agreements provided that the PSS contract funds would flow first to either Basil or SSG and then Basil would pay "commissions" to Thimar out of a joint bank account in Saudi Arabia. *Id.* The agreements also provide that the "commissions" would be wired from the joint account to unspecified accounts "in any jurisdiction" at the sole determination of Thimar. *Id.*

Other allegations in the amendment support inferences of Basil's active role in the bribery scheme, including the following: (1) that Basil knew Prince Bandar's role in making sure that the PSS work was awarded to SSG, Amendment, ¶ 216.1; (2) that Sikorsky Vice President Peterson wrote a memo in code language indicating that Basil President Fred Rockwell had been provided with a copy of a letter from Prince Bandar directing SSG's selection as the PSS contractor, Amendment, ¶ 216.1; (3) that Mr. Rockwell used the interstate wires to telecopy a letter to Mr. Peterson that Prince Bandar had "approved" the idea of having Basil transfer all of its interest in the PSS agreement to Thimar, Amendment, ¶ 216.2; (4) that from August 1989 to August 1991, Basil "loaned" exorbitant amounts of cash to Thimar without interest, without any clear written agreement for repayment, without sufficient clarification as to the specific requirement for the funds, and without any sharing of the profits from the PSS work, which "loans" were intentional bribes to Namlah, Amendment,

¶ 221.2; and (5) that only after Plaintiff commenced this action, after Basil had "loaned" Thimar nearly a million dollars without any written agreement for repayment, and after most of the original three-year PSS contract had run, did Basil and Thimar reduce to writing a prior oral "agreement" for Basil to provide "financing" to Thimar for the project. Amendment, ¶ 221.3.

The Court finds that these allegations, taken with the remaining allegations of the Complaint, support the inference that Basil agreed to take part in the unlawful conspiracy and knowingly assisted the unlawful acts of the other defendants. *Silverman v. Weil,* 662 F.Supp. 1195, 1200–1201 (D.D.C.1987); *Barlow v. McLeod,* 666 F.Supp. 222, 225 (D.D.C.1986), *aff'd without op.,* 861 F.2d 303 (D.C.Cir.1988).

The new allegations reveal Basil as an active participant in setting up the alleged mechanism for the bribes as well as transferring the unlawful funds. For these reasons, the Court finds that by his amendment the Plaintiff has cured the deficiency outlined in the Court's June 17, 1992 Order and that the Amended Complaint would survive a motion to dismiss for failure to state a claim. *Parker v. Baltimore & O.R. Co.,* 652 F.2d 1012, 1018–1020 (D.C.Cir.1981).

*Rule 54(b)*

■ Basil challenges the Plaintiff's request for leave to amend on the ground that because Basil was removed as a party from this action by the Court's June 17 dismissal order, Plaintiff must satisfy the terms of Federal Rule 15(c) which permit the addition of a party only in cases where a plaintiff has initially mistaken the intended defendant's identity.[3] Basil's identity was never mistaken, Basil argues, and thus the amendment is barred. This argument, however, is defeated by the operation of Federal Rule 54(b).

Rule 54(b) requires the Court, upon issuing an order in a case involving multiple claims or parties, to make certain express determinations with respect to the order.

**3.** Rule 15(c) provides, in part:
An amendment changing the party against whom a claim is asserted relates back if ... but for a mistake concerning the identity of the

proper party, the action would be brought against the party.
Fed.R.Civ.P. 15(c).

Without such determinations on record, the rule commands, the order is not final and may be revised any time up until the final disposition in the case. *See* Fed.R.Civ.P. 54(b).

■ Although the primary purpose of the rule is to preserve the right of a party to appeal from a final judgment, Rule 54(b) unmistakably defines the effect of a nonfinal order on the status of parties in a multi-party case:

> In the absence of [the express determinations called for in Rule 54(b)], any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties *shall not terminate the action as to any of the claims or parties,* and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed.R.Civ.P. 54(b) (emphasis supplied). Plaintiff cites several cases in this Circuit which, while not specifically addressing the issue at hand, affirm the language in the rule.[4]

Basil, on the other hand, fails to address meaningfully the import of Rule 54(b). Basil argues that the June 17 dismissal order which did not specify whether it was with or without prejudice, nevertheless operates, pursuant to Rule 41(b), as "an adjudication upon the merits." Fed.R.Civ.P. 41(b). Basil submits that Rule 41(b) ends the matter.

The apparent conflict between the directions contained in Rule 41(b), concerning dismissals, and Rule 54(b) relating to judgments on actions involving multiple claims or parties is not addressed by Basil. Furthermore, this Circuit has not addressed the issue. However, in *United States v. Arkansas,* 791 F.2d 1573, 1576 (8th Cir.1986), the Eighth Circuit held that Rule 54(b) controls. The Eighth Circuit found that a district

court's dismissal of two parties in a multi-party action was not a final judgment until the adjudication of the rights and liabilities of the remaining parties. The court further held that the dismissal was not a *res judicata* bar to the reinstatement of the two parties, seven years after their dismissal, because "there has been no earlier final judgment from which [the parties] could appeal." *United States v. Arkansas, supra,* at 1576. The reasoning of the Eighth Circuit is persuasive. The Court finds that this case is no different.

Thus, neither finding, nor being presented with any authority to the contrary, this Court has no basis for questioning the plain meaning of Rule 54(b) and therefore concludes that Basil remained a party to the case subsequent to the Court's nonfinal June 17 Order.

Finally, the resolution of this issue eliminates Basil's argument that Rule 15(c), as it relates to the change or addition of parties, precludes Plaintiff's proposed amendment.

*Statute of Limitations*

■ Basil also contends that the original complaint did not toll the statute of limitations on Plaintiff's claims against Basil. Basil's theory is that the limitations statute was not tolled because the original complaint was defective. Subsequently, but prior to Plaintiff's filing for leave to amend, the statute of limitations on all claims against Basil expired.[5] Thus, Basil argues, the amendment is now time-barred.

In support of its argument Basil cites to *Bomer v. Ribicoff,* 304 F.2d 427, 428–429 (6th Cir.1962), which held that "[a]n action dismissed without prejudice leaves the situation the same as if the suit had never been brought." *Id.* at 428–429. Based on this holding, Basil asserts that the filing of a complaint, later dismissed, does not toll the statute of limitations. While this proposition has validity in *Bomer,* it is not pertinent in this case. *Bomer* concerned the voluntary

---

4. *Haynesworth v. Miller,* 820 F.2d 1245, 1253 (D.C.Cir.1987); *Reuber v. United States,* 773 F.2d 1367, 1368 (D.C.Cir.1985); *cf. Marotta v. Milestone et al.,* 314 F.2d 242 (D.C.Cir.1963).

5. Basil has demonstrated that, absent tolling, the limitations periods on Plaintiff's RICO claims and common law claims expired on October 5, 1992 and October 5, 1991, respectively. Basil's Opp., p. 8.

dismissal of a single-claim, single-defendant action. It therefore fails to bear upon Rule 54(b) and its effect upon the status of a complaint against a party involuntarily dismissed from a multi-party, multi-claim lawsuit.[6]

Basil cites *Bouchet v. National Urban League Inc.,* 730 F.2d 799 (D.C.Cir.1984), to support its theory that Plaintiff's common law claims, in particular, are barred by the District of Columbia statute of limitations.[7] In *Bouchet,* the D.C.Circuit held, quoting from *Dupree v. Jefferson,* 666 F.2d 606 (D.C.Cir.1981), that " 'under District of Columbia law the pendency of an action involuntarily dismissed without prejudice does not operate to toll the running of the statute of limitations.' " *Id.*

■ Though seemingly on point, this principle of District of Columbia law is preempted in this case by the application of Federal Rule 15(c). *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Davis v. Piper Aircraft Corporation,* 615 F.2d 606 (4th Cir.1980). Ordinarily, in a diversity case, the federal court must apply the state statute of limitations. *Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946). However, when there is a conflict between state law and an applicable Federal Rule, the Supreme Court, in *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), has held:

> When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided Erie choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither

the terms of the Enabling Act nor constitutional restrictions.[8]

*Id.,* at 470, 85 S.Ct. at 1143. Following the decision in *Hanna,* many courts have held that Rule 15(c) permits the relation back of an amendment that would have been barred under the applicable state limitations law. *See,* 3 *Moore's Federal Practice* ¶ 15.15[2] (2d ed. 1993) and cases cited at 15–143, n. 6. This Court joins them.

*Prejudice to Basil*

■ Basil's final argument in opposition to Plaintiff's amendment is that Plaintiff has unreasonably delayed requesting the amendment and that the delay has prejudiced Basil. Plaintiff represents that the discovery material that forms the basis for his request was produced by Basil and UTC only by increments after June 17, 1992 and that Basil's last production of documents was made on December 28, 1992. Plaintiff argues, in any event, that Basil is not prejudiced in defending this action.

■ While delay alone is not a reason for denying a motion to amend a pleading, the amendment may be denied if the delay causes undue prejudice to the opposing party. *Societe Liz, S.A. v. Charles of Ritz Group, Ltd.,* 118 F.R.D. 2, 4–5 (D.D.C.1987). In evaluating whether or not the opposing party is prejudiced by an amendment, the Court is guided by the following standard:

> To show prejudice, [the opposing party] 'must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely.'

*Foremost–McKesson Inc. v. Islamic Republic of Iran,* 759 F.Supp. 855, 858 (D.D.C.1991) (quoting *Heyl & Paterson Int'l v. F.D. Rich*

---

**6.** Moreover, *Bomer's* holding does not relate to statutes of limitation: Referring to the preconditions for filing suit under the applicable law, the *Bomer* court held: " . . . such conditions operate as a condition of liability rather than as a period of limitation and there can be no recovery unless the condition precedent is fulfilled." *Id.,* at 429 (citations omitted).

**7.** The parties do not dispute the application of the District of Columbia statute of limitations as to the common law claims alleged against Basil. Basil's Opp., p. 9.

**8.** Basil's offhand suggestion that the application of Rule 15(c) in this case violates the Rules Enabling Act, 28 U.S.C. § 2072, is without basis. *See Brown v. E.W. Bliss Co.,* 818 F.2d 1405, 1409 (8th Cir.1987), *aff'd,* 831 F.2d 810 (8th Cir.1987).

*Housing,* 663 F.2d 419, 426 (3rd Cir.1981), *cert denied sub nom.*

Here, the proposed amendment is directly related to the facts originally pleaded against Basil. Thus, "[a]ll documents and information relating to the original complaint will also relate to the amended complaint. [Basil] will have the same opportunity to present facts and evidence after the amendment as it did before the amendment." *Foremost–McKesson Inc. v. Islamic Republic of Iran, supra,* at 858.

Although Basil has not kept pace with the progress of discovery[9], this is not without remedy. Plaintiff indicates that if "it only asks, Basil can get a set of Plaintiff's recent productions. . . ." Pl.Mem., p. 13. In addition, the Court shall permit Basil, to the extent reasonably necessary and upon request to the Court, to depose Plaintiff and other witnesses whose depositions have taken place since the June 17 order.

Under these circumstances, the Court finds that Basil will not be prejudiced by allowance of the amendment because Basil has sufficient time, between now and the scheduled trial date in late October 1993, to prepare for trial.

### CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's Motion For Leave To Amend The Complaint. An appropriate Order is attached.

### *ORDER*

Upon consideration of Plaintiff's motion for leave to amend the Complaint, filed January 25, 1993, Frank E. Basil, Inc.'s (Basil) Opposition, Plaintiff's Reply, Basil's Notice of Supplemental Authority, Plaintiff's response thereto, as well as the entire record in this case, it is by the Court this 11th day of May 1993,

ORDERED that Plaintiff's motion for leave to amend the Complaint is GRANTED; and it is further

ORDERED.

---

9. In its opposition brief, Basil states that it did not participate in the Plaintiff's deposition, or the depositions of four non-party witnesses (Trendley, James, Hoffman, and Moulder). Basil further reports that it has not received some of the documents that Plaintiff has produced and that it has received only a few of the many pleadings served by other defendants since the June 17 dismissal.